THE STATE OF OHIO, APPELLEE, *v.* GOUGH, APPELLANT.

(No. CA-3210—Decided December 4, 1986.)

*Robert L. Becker,* prosecuting attorney, for appellee.

*Berryhill & Shaheen* and *John C. Berryhill,* for appellant.

WISE, J. Defendant-appellant, Michael Gough ("Gough"), appeals from his conviction, following trial by jury, on the charge of aggravated drug trafficking (a violation of R.C. 2925.03) in the Court of Common Pleas of Licking County. Gough raises the following sole assignment of error:

"The trial court erred in failing to suppress the evidence at the pre-trial hearing when the search was based on an arrest which resulted from an improperly issued bench warrant."

On February 2, 1986, Gough entered a Sohio service station at approximately the same time that Sergeant Glenn Cunningham of the Newark Police Department was leaving that service station. Sergeant Cunningham was familiar with Gough and often saw him walking up and down Main Street in Newark. Sergeant Cunningham "didn't know whether * * * [appellant] had a driver's license or not and so [the sergeant] called into the station to have them pull [appellant's] record and run a computer check on him. * * *"

The dispatcher responded to this inquiry stating that Gough "did have a valid driver's license, but the computer showed that there was an active warrant on for failure to appear in court." Sergeant Cunningham then contacted another policeman for assistance. The two officers approached Gough and asked for identification, and Gough produced his driver's license. The officers then informed Gough that he was under arrest and patted him down. During the pat-down search, the sergeant felt some "hard objects" in Gough's pockets which turned out to be plastic vials containing LSD and a marijuana pipe. Gough was subsequently convicted for the possession of the LSD.

The bench warrant upon which Gough was originally picked up was erroneously issued by the Licking County Municipal Court. That court issued the warrant in the mistaken belief that Gough had failed to serve the remainder of a sentence for disorderly conduct. Gough was to serve ten days during the course of a month in lieu of a $100 fine. Gough did dutifully show up and serve his time. However, for some reason not specified in the record, Gough's name appeared on a list of people who had not served their time. The municipal court then sent a letter to Gough advising him to contact the court and explain his absence. The letter was returned to the court marked "return to sender * * * unable to forward." Since Gough failed to contact

the court, a warrant was issued in October 1984. The warrant remained on file until two days after Gough's February 2, 1986 arrest when it was recalled.

Gough, prior to trial, filed a motion to suppress the fruits of the arrest, search, and seizure conducted at the gas station as a result of the invalid warrant. The trial court denied the motion.

## I

Appellant Gough argues that the "invalidity of the initial warrant situation affects the entire procedure and, thusly, the fruits (contraband seized) of the search cannot be used against the appellant at trial."

It is clear from the record in the case at bar that the bench warrant was not valid. Thus, the arresting officer did not have probable cause to arrest Gough, nor did he have a reasonable articulable suspicion to stop Gough. Accordingly, any evidence secured incident to the arrest should have been excluded from the trial. *State* v. *Timson* (1974), 38 Ohio St. 2d 122, 67 O.O. 2d 140, 311 N.E. 2d 16, paragraph two of the syllabus.

The state argues that the evidence in question should not be excluded, contending that a "good faith exception" applies in this case, citing in support *United States* v. *Leon* (1984), 468 U.S. 897; and *Massachusetts* v. *Sheppard* (1984), 468 U.S. 981. We disagree. *Leon* and *Sheppard* are not applicable to the case at bar. We find instead that the United States Supreme Court's analysis in *Whiteley* v. *Warden* (1971), 401 U.S. 560, 58 O.O. 2d 434 is determinative of the issue before us.

In *Whiteley,* Justice Harlan, writing for the majority, held that since the warrant issued was not valid, and even though the arresting officer relied upon the report of the warrant on the radio, since the arresting officer had no further information corroborating the allegations used for the faulty warrant, the petitioner's arrest violated his constitutional rights and the evidence secured incident to the arrest should have been excluded from the trial. In *Whiteley,* a Wyoming magistrate issued an arrest warrant based upon a complaint which failed to demonstrate probable cause for arrest. The warrant information was transmitted over a law enforcement radio network. In reliance upon the information broadcast on the radio, a patrolman arrested Whiteley and in the ensuing search seized several items introduced into evidence at trial. The state argued that regardless of the sufficiency of the complaint, the arrest and search should be upheld because the patrolman acted in reliance upon the radio bulletin and reasonably assumed that whoever authorized the bulletin had probable cause to direct Whiteley's arrest. While recognizing that the field officer had acted in good faith, the Supreme Court nonetheless invalidated the arrest and search. The court stated at 568:

"We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."

*Whiteley* clearly supports the view that the police may rely upon their collective knowledge in making an arrest, but, accordingly, they are bound by that same collective knowledge if they make an illegal arrest.

It is clear that the *Leon* and *Sheppard* decisions did not affect the viability of this principle. *Albo* v. *State* (Fla. App. 1985), 477 So. 2d 1071; accord, see *People* v. *Joseph* (1984), 128 Ill. App. 3d 668, 83 Ill. Dec. 883, 470 N.E. 2d 1303. The "good faith" exception to the exclusionary rule specifically applies to a case in which "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Leon,* 468 U.S. at 920. The court's rationale for developing the "good faith" exception was that the exclusionary rule was created to deter unlawful police conduct, not poor decision-making by magistrates. Thus, the court reasoned that where there is no police illegality and there is "good faith" reliance upon a warrant, there is nothing to deter.

But in the situation at bar, there is police conduct to deter. This distinction was recognized by the court in *Leon* where the majority stated in fn. 24 at 923:

"References to 'officer' throughout this opinion should not be read too narrowly. It is necessary to consider the *objective reasonableness,* not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit *and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.* See *Whiteley* v. *Warden,* 401 U.S. 560, 568 [58 O.O. 2d 434, 438], (1971)." (Emphasis added.)

Furthermore, the Supreme Court has continued, subsequent to the *Leon* decision, to *recognize that just as the* police may permissibly act upon their collective knowledge, so they are restrained by their collective ignorance. See *United States* v. *Hensley* (1985), 469 U.S. 221.

It is plain "* * * that the 'good faith' required by *Leon* — which means an objectively considered reasonable basis for police action, 468 U.S. at 919, 104 S. Ct. at 3420 n. 20, 82 L. Ed. 2d at 696-697 n. 20 — refers to the knowledge and information possessed by the law enforcement community as a whole, rather than the arresting officer alone. * * *" *Albo, supra,* at 1074.

In *People* v. *Ramirez* (1983), 34 Cal. 3d 541, 194 Cal. Rptr. 454, 668 P. 2d 761, which involved an arrest made in reliance on a computer error of several months' duration, Justice Mosk, speaking for a unanimous court, eloquently stated the reasons why the exclusionary rule is particularly appropriate in these types of situations:

"* * * [C]onsistent with the deterrence goal of the exclusionary rule * * * we focus not on the actions of the arresting officer but on the conduct of law enforcement generally. Suppressing the fruits of an arrest made on a recalled warrant will deter further misuse of the computerized criminal information systems and foster more diligent maintenance of accurate and current records."

"* * *

"Although in this case the arresting officer no doubt acted in good faith reliance on the information communicated to him through 'official channels,' law enforcement officials are collectively responsible for keeping those channels free of outdated, incomplete, and inaccurate warrant information. That the police now rely on elaborate computerized data processing systems to catalogue and dispatch incriminating information enhances rather than diminishes that responsibility." *Ramirez* at 547, 552, 194 Cal. Rptr. at 458, 461, 668 P. 2d at 765, 768.

Although there is nothing in the record in this case indicating that a computer error was the cause of the invalid bench warrant, inaccurate information was communicated to the municipal court resulting in an invalid bench warrant which remained active for more than a year. The record does not pinpoint precisely where or when the error occurred, but it is obvious that it resulted from negligence, inaccuracies, or inadequacies in record-keeping procedure. At the time this bench warrant was issued, there was no standard procedure by which the law enforcement personnel at the jail informed the municipal court whether a defendant had properly served his time. As a result, we must hold that the evidence seized in the arrest in the case at bar be suppressed. To hold otherwise would be to encourage careless, perhaps deliberately neglectful, record keeping. See *Albo, supra.* We recognize that a law enforcement official placing a name on a list can be just as great a threat to liberty as one who batters down a door without a warrant.

Therefore, we sustain appellant Gough's sole assignment of error, and reverse and remand this case to the court of common pleas for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PUTMAN, P.J., concurs.

MILLIGAN, J., concurs separately.

MILLIGAN, J., concurring. I concur in the judgment of the court but for more narrow reasons than in the opinion.

It strikes me that this case, unlike many others that deal with the exclusionary rule, exemplifies both the reason and the applicability of the rule. Here, the same police department that created the clerical inaccuracies also made the arrest. Further, the department had the capacity to ameliorate the practices that led to the error, and continues to have the capacity to correct its record-keeping procedure. This is different from the situation where the error is reasonably unavoidable, for example, in a situation where the person arrested has the same name as the person named on a warrant. In this case, the remedy is particularly appropriate to the constitutional offense.