600 A.2d 111

**Thomas E. OTT, III**

v.

**STATE of Maryland.**

**No. 31, Sept. Term, 1991.**

Court of Appeals of Maryland.

Jan. 13, 1992.

**208**

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner/cross respondent.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent/cross petitioner.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This case presents for resolution the questions whether Thomas E. Ott, III, the petitioner, was illegally detained and/or illegally arrested and, if he was, whether the evidence seized by reason of the detention or arrest should have been suppressed. The latter question requires a determination of petitioner's standing to challenge the seizure of the evidence. The Circuit Court for Frederick County ruled in favor of petitioner, finding that: (1) he had standing by virtue of his occupation of the driver's seat in the automobile; (2) "the officers had [no] probable cause in the first place to go in like they did;" and (3) the search of the car's glove box was not incident to petitioner's arrest "and cer-

tainly not for the presence of weapons." The court, therefore, suppressed the evidence and the State appealed.[1]

The intermediate appellate court reversed. *State v. Ott,* 85 Md.App. 632, 584 A.2d 1266 (1991). Assuming *arguendo* that petitioner had standing, the court held that the initial encounter between petitioner and the police did not rise to a Fourth Amendment violation. It further held that the petitioner's arrest, *albeit* pursuant to an invalid arrest warrant, was effected in good faith. "Thus, the warrantless search of the vehicle was valid as a search incident to a lawful arrest...," 85 Md.App. at 646–47, 584 A.2d at 1273, notwithstanding that the petitioner had been handcuffed and placed outside the automobile before the glove box was searched.

We granted petitioner's petition for writ of certiorari and the State's conditional petition to address the important questions presented. For the reasons hereinafter set forth, we will reverse the judgment of the Court of Special Appeals.

1.

The facts are not in dispute. Consequently, we will adopt the statement of facts as set out in the opinion of the Court of Special Appeals:

On January 5, 1990, Cpl. Fogle [2] was on routine patrol near the Francis Scott Key Mall in Frederick, Maryland. At about 1:40 a.m., he observed two people sitting in a car in an otherwise deserted public parking lot in that mall. No signs were posted that said "No trespassing," nor were there any indicating that parking was prohibited

---

**1.** The State appeals pursuant to Maryland Code (1974, 1989 Repl.Vol.) § 12–302(c)(3)(i) of the Courts and Judicial Proceedings Article. Pursuant to that section, the State may appeal, *inter alia,* in a case brought under, Art. 27, § 286. In accordance with § 12–302(c)(3)(iv), the charges must be dismissed should this Court affirm the decision of the trial court. Petitioner was charged with possession of cocaine with intent to distribute and related offenses.

**2.** The only witness to testify at the suppression hearing was Cpl. Fogle.

after certain hours. In short, no restrictions had been posted at all. Fogle [approached] the car and its occupants because of thefts and acts of vandalism that previously had occurred in the parking lot. When he decided to do so, he saw nothing suspicious occurring in the car or anywhere else nearby.

Fogle asked the two individuals their names and also asked what they were doing there. They identified themselves as Thomas Ott (seated in the driver's seat) and Sandra Sorenson (seated in the passenger's seat), and said that they were just talking. After Fogle obtained identification from each one, he radioed police headquarters to run a computer check to determine whether either of them was the subject of an outstanding warrant. Nothing in Fogle's testimony suggested that Ott's or Sorenson's responses to his initial questions were suspicious in any manner; likewise, Fogle appears to have requested written identification to run a computer check as a matter of routine.

The computer check indicated that an outstanding warrant existed for Ott because of his failure to appear in a civil "non-payment" case. Fogle subsequently arrested Ott on this basis. Fogle then asked Sorenson—the car owner—to step out of the car so that the other officers on the scene could conduct a search incident to Ott's arrest. As Sorenson exited the car, Cpl. Johnson spied a Twenty-dollar bill rolled up into a straw that fell from her lap. Fogle confiscated the bill as evidence, recognizing that it could be used to ingest controlled dangerous substances. The officers proceeded to search the car. They discovered in the glove compartment three bags of a white powdery substance that Fogle recognized to be cocaine. In addition they found under the passenger seat a small round mirror with a white powdery residue on it. The officers handcuffed Ott and Sorenson, and transported them both to the police station. After Ott signed a waiver of rights form he told Cpl. Smith that he was trying to sell the cocaine to get out of debt.

Cpl. Fogle later determined that, in fact, no outstanding warrant existed for Ott because the bench warrant had been satisfied on December 29, 1989. Another sheriff apparently had served the warrant, but had not removed it from the computer before January 5, 1990. At the suppression hearing, the State introduced a computer printout which showed that there was an active warrant when Cpl. Fogle ran the computer search.

85 Md.App. at 634–35, 584 A.2d at 1267–68.

### 2.

Petitioner did not present any evidence. He argued, however, that, since the warrant on the basis of which the arrest was made was invalid, he was illegally arrested. Petitioner also contended that he had standing, by virtue of his being seated in the driver's seat of the car.

### A.

It is undisputed that petitioner was arrested on the basis of an outstanding arrest warrant which had been satisfied seven days earlier. Thus, unless Cpl. Fogle's subjective good faith reliance on the outdated information supplied by the Frederick County sheriff's computer mandates a different result, petitioner's arrest was illegal. The State argued below, and the Court of Special Appeals agreed, that the good faith exception to the exclusionary rule applies to the case *sub judice*. The court reasoned that the policy underlying the exclusionary rule, "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved," *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677, 687 (1984), quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561, 571 (1974), and, in particular, "to deter police misconduct", *id.*, 468 U.S. at 917, 104 S.Ct. at 3417, 82 L.Ed.2d at 694, is not furthered by suppressing evidence when, rather than acting in bad faith, the police act in complete good faith. 85 Md.App. at

643–44, 584 A.2d at 1272, citing *Leon*, 468 U.S. at 919, 104 S.Ct. at 3418, 82 L.Ed.2d at 696 (citing *United States v. Peltier*, 422 U.S. 531, 539, 95 S.Ct. 2313, 2318, 45 L.Ed.2d 374, 382 (1975)). As the *Peltier* Court put it:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained by a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

*Id.* The Court of Special Appeals recognized the applicability of the "collective knowledge/collective ignorance" rule, *see Albo v. State*, 477 So.2d 1071, 1075 n. 4 (Fla.App.1985); nevertheless, it was of the view that, because of the relatively small number of days by which the information was outdated, "this is [not] a case of police misconduct or negligence such that we should apply the exclusionary rule." 85 Md.App. at 646, 584 A.2d at 1273. The court relied upon *Commonwealth v. Riley*, 284 Pa.Super. 280, 425 A.2d 813, 816 (1981) and *Childress v. United States*, 381 A.2d 614 (D.C.App.1977).

The State argues, in addition, that *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1979); *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); and *Florida v. Jimeno*, 500 U.S. ——, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) require affirmance of the Court of Special Appeals. It contends that police reliance on warrant information received from its computer was objectively "reasonable conduct under the Fourth Amendment and therefore no Fourth Amendment violation occurred...."

Petitioner concedes that Cpl. Fogle acted in "subjective good faith," *i.e.* he was not aware that the warrant on the basis of which he made the arrest had been previously served. Petitioner denies, however, that that fact is dispositive. Applying the "collective knowledge/collective ignorance" rule, which he too asserts is applicable, he argues that Cpl. Fogle must be charged with knowledge that the

warrant had been satisfied prior to petitioner's arrest. That result is required, according to petitioner, because the outdated information came from a computer belonging to the Frederick County Sheriff's Department, the warrant was issued in Frederick County, it had been turned over to the Sheriff's Department for execution, and the warrant had been executed by a member of the Sheriff's Department. From this, the petitioner maintains that the arresting officer did not act objectively reasonably. Moreover, petitioner observes, "the State does not explain why a County Sheriff's department would reasonably require more than seven days to update its own records."

In *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), a sheriff in one Wyoming county, acting on an informant's tip, obtained a warrant for the arrest of Whiteley and a companion. That fact, along with descriptions of the two men, were broadcast over state-wide police radio. An officer in another Wyoming county, relying on the descriptions, arrested Whiteley and his companion. Evidence uncovered during the search incident to that arrest was used, over objection that he was illegally arrested, to convict Whiteley. The Supreme Court agreed with Whiteley, holding that the warrant, pursuant to which he was arrested, was invalid. It then rejected the argument that, because he was unaware of the factual basis provided to the magistrate for issuance of the warrant, the arresting officer had probable cause for a warrantless arrest. 401 U.S. at 566, 91 S.Ct. at 1036, 28 L.Ed.2d at 312. In particular, the Court found unpersuasive the argument that the radio bulletin rendered reasonable the assumption that, whoever authorized the bulletin had probable cause to direct the arrest. 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313. It explained:

> We do not, of course, question that the Laramie Police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the

information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision by the instigating officer to rely on fellow officers to make the arrest.

*Id.*

In *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), a case decided after its decision in *Leon*, the Supreme Court explicated the *Whiteley* holding. There, the issue was whether a stop, in reliance on a "wanted flier" issued by another police department, of an automobile driven by the accused was valid. Relying on *Whiteley*, the Court held that it was, so long as the stop was in objective reliance on the "wanted flier" and the police department issuing it collectively possessed reasonable suspicion sufficient to justify it. 469 U.S. at 229–33, 105 S.Ct. at 680–82, 83 L.Ed.2d at 612–15. The Court opined:

Thus, *Whiteley* supports the proposition that, when evidence is uncovered during a search incident to an arrest and reliance merely on a flier or bulletin, its admissibility turns on whether the officers who issued the flier possessed probable cause to make the arrest. It does not turn on whether those relying on the flier were themselves aware of the specific facts which led their colleagues to seek their assistance. In an era when criminal suspects are increasingly mobile and increasingly likely to flee across jurisdictional boundaries, this rule is a matter of common sense: it minimizes the volume of information concerning suspects that must be transmitted to other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction.

469 U.S. at 231, 105 S.Ct. at 681, 83 L.Ed.2d at 613–14. Although *Hensley* emphasized the reasonableness of a police department's reliance on information possessed by another police department, it also recognized the limitation

expressed in *Whiteley*: if the sending police department does not have the requisite information, the receiving police department's reliance on the sending department is not "insulated from challenge." 469 U.S. at 230–31, 105 S.Ct. at 680–81, 83 L.Ed.2d at 613–14.

In Maryland, probable cause may be based on information within the collective knowledge of the police. *Mobley and King v. State*, 270 Md. 76, 81, 310 A.2d 803, 807 (1973), *cert. denied*, 416 U.S. 975, 94 S.Ct. 2003, 40 L.Ed.2d 564 (1974); *Hopkins v. State*, 239 Md. 517, 520, 211 A.2d 831, 833 (1965); *Johnson v. State*, 238 Md. 528, 539, 209 A.2d 765, 770 (1965); *Mercer v. State*, 237 Md. 479, 483, 206 A.2d 797, 800 (1965); *Farrow v. State*, 233 Md. 526, 531–32, 197 A.2d 434, 436–37 (1963); *Carter v. State*, 18 Md.App. 150, 154, 305 A.2d 856, 858 (1973). Thus, while an officer may make an arrest on the strength of a warrant, the existence of which has been certified to him by other officers in his department, if the officers who obtained the warrant did not possess sufficient information or evidence to establish probable cause, the arrest based on the warrant is illegal. In *Carter*, an automobile, with a specific license tag number, was reported stolen. The police recovered the automobile on the same day it was reported stolen; however, the incident report that had been prepared was not cancelled. Approximately two months later, Carter was a passenger in a car whose license tags were, according to the stolen automobile report, the same as those on the car that previously had been reported stolen. He was arrested, charged with, and convicted of possession and control of narcotics. Applying the collective knowledge rule, the Court of Special Appeals noted that "the police department should have known that [the stolen vehicle report] was erroneous, since police officers had recovered the vehicle and tags originally reported stolen on January 10, 1969." 18 Md.App. at 154, 305 A.2d at 859. It concluded that, because the information on which the police acted was its own "outdated copy of an erroneous report of a stolen motor vehicle which the police had recovered on the same

day it was taken," the arresting officer, a part of the police team, "must be charged with the knowledge that the report was, in effect, rescinded when members of the Baltimore City Police Department recovered the car shortly after it was stolen. Accordingly, the erroneous information transmitted [to the arresting officer] and on the basis of which he arrested the appellant was clearly insufficient to show probable cause." 18 Md.App. at 156, 305 A.2d at 860. This case thus stands for the proposition that "police may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected." (footnote omitted). LaFave, *Search & Seizure,* Vol. 2, § 3.5(d), 21–22 (1987).

Cases from other jurisdictions, whether decided before *Leon, e.g., United States v. Mackey,* 387 F.Supp. 1121, 1125 (D.Nev.1975); *People v. Ramirez,* 34 Cal.3d 541, 194 Cal. Rptr. 454, 458, 668 P.2d 761, 764–65 (1983); *People v. Mitchell,* 678 P.2d 990, 993–94 (Colo.1984); *State v. Trenidad,* 23 Wash.App. 418, 595 P.2d 957 (1978), or after *Leon, People v. Howard,* 162 Cal.App.3d 8, 208 Cal.Rptr. 353 (1984); *Albo v. State,* 477 So.2d 1071 (Fla.App.1985); *People v. Mourecek,* 208 Ill.App.3d 87, 152 Ill.Dec. 964, 968, 566 N.E.2d 841, 845 (1991); *People v. Joseph,* 128 Ill.App.3d 668, 83 Ill.Dec. 883, 470 N.E.2d 1303 (1984); *State v. Taylor,* 468 So.2d 617 (La.App.1985); *State v. Gough,* 35 Ohio App.3d 81, 519 N.E.2d 842 (1986), are in accord.

*Whiteley* is not affected by *Leon,* as *Hensley* makes clear. In fact, cases that directly address the "good faith" exception in the context of the collective knowledge rule reject the applicability of the good faith exception to the exclusionary rule.

In *Joseph, supra,* for example, a case similar to that *sub judice,* after distinguishing the *Leon* facts from those before it, the court noted the problems evolving "from police reliance on electronically recorded and disseminated criminal files," which are not kept up to date. 83 Ill.Dec. at 886, 470 N.E.2d at 1306. It then opined:

In the case at bar the arresting officer received computerized information that there was a warrant outstanding against the defendant, and he arrested defendant solely on that basis. The warrant, in fact, had been recalled eleven days earlier. During this period of time defendant was subject to arrest through no fault of his own and, only because information had been retained in the system when it was no longer valid. *See People v. Jennings,* 1981, 54 N.Y.2d 518, 446 N.Y.S.2d 229, 430 N.E.2d 1282 (1982).

In *Leon* the Supreme Court observed that the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. (468 U.S. [897], 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677). The situation in the instant case reflects a matter within the responsibility and control of police authorities who failed to update their records to accurately reflect defendant's current status. In this age of computerization, we do not believe it would be appropriate to sanction the arrest here, thereby allowing for law enforcement authorities to rely on an error of their own making.... Moreover, it is our opinion that the good-faith reliance of the arresting officer, in acting upon information provided to him through police channels, cannot overcome the intrusion made upon defendant's fourth amendment rights. (some citations omitted).

*Id. Taylor, supra,* 468 So.2d at 625, relying on *Joseph,* added:

It logically follows that once police authorities have actual knowledge of a fact (here the invalidity of the warrant which the ... Sheriff's Office must be charged with because of the information on file in its records department), all successive officers who dealt with defendant are held to have knowledge of this fact.

*See also Albo, supra,* 477 So.2d at 1074, in which the court commented:

Any doubt about the inapplicability of *Leon* to a case in which the arresting officer, although in individual "good

faith," acts in reliance upon objectively incorrect information supplied by other police sources, has been dissipated by the recent, post-*Leon* decision in *United States v. Hensley,* 469 U.S. [221], 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

*Hensley* directly applied the *Whiteley* probable cause-arrest rule to a *Terry* stop effected to investigate a prior crime. It held that a stop based on a flyer or bulletin is permissible when the officers who issued it had a founded suspicion that the designated person had committed an offense. But the court emphasized that just as the police may permissibly act upon their collective knowledge, so they are restrained by their collective ignorance.

Indeed, *Leon,* itself, supports the proposition that the good faith exception is inapplicable:

References to "officer" throughout this opinion should not be read too narrowly. It is necessary to consider the objective reasonableness not only of the officers who eventually executed the warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. *See Whiteley v. Warden,* 401 U.S. 560, 568, 28 L.Ed.2d 306, 91 S.Ct. 1031 (1971).

468 U.S. at 923 n. 24, 104 S.Ct. at 3420 n. 24, 82 L.Ed.2d at 698 n. 24.

*Garrison, Rodriguez,* and *Jimeno* are also inapposite. In none of those cases was the source of the misapprehension of the facts information obtained from another police officer or the result of a police department failure to update its own records. In *Garrison,* the search was pursuant to a facially valid search warrant; however, due to the peculiar layout of the subject premises, the officers mistakenly believed that they had authority to search an area not covered by the warrant. That belief was, the

Court held, objectively reasonable. 480 U.S. at 80–81, 107 S.Ct. at 1015, 94 L.Ed.2d at 78. The Supreme Court held, in *Rodriguez*, that it was objectively reasonable for the police to conduct a search in reliance on the consent given by a person who, notwithstanding that it later turned out she did not, appeared to have authority to do so. 497 U.S. at ——, 110 S.Ct. at 2801, 111 L.Ed.2d at 161. Significantly, the consenting person, *albeit* illegally, possessed a key to the apartment and stated that she lived at the premises, neglecting to add that she had done so some days before. 497 U.S. at ——, 110 S.Ct. at 2797, 111 L.Ed.2d at 156. Nor is *Jimeno* supportive of the State's arguments. It stands for the rather unremarkable proposition that, having advised the consenting person as to what is being sought, it is objectively reasonable for the officer to whom consent is given to assume that the consent covers the search of any container in which the evidence sought could logically fit. 500 U.S. at ——, 111 S.Ct. at 1804, 114 L.Ed.2d at 303.

In the case *sub judice*, whether probable cause existed depended upon the accuracy of the outstanding warrant information in the Sheriff Department's computer. Placing accurate and current information into the computer, just as taking inaccurate or outdated information out, is a function performed by personnel in the Sheriff's Department. Allowing outdated, inaccurate information to remain in the computer, thus, placing citizens at risk of being deprived of liberty, without legal basis, *see Joseph*, 83 Ill.Dec. at 886, 470 N.E.2d at 1306, therefore, is the fault of the Sheriff's Department.

The arresting officer had no actual knowledge that the warrant on which he arrested petitioner was no longer outstanding. In that sense, then, he acted in subjective good faith. Nevertheless, he was chargeable with knowledge of the warrant's invalidity. Since an officer in the Sheriff's Department had previously served the warrant, that department must have known that it was outdated.

■  Notwithstanding the applicability of the "collective knowledge/collective ignorance" rule to the circumstances *sub judice*, a fact that the Court of Special Appeals specifically acknowledged, 85 Md.App. at 645, 584 A.2d at 1273, and which the State has not expressly denied, the State argues, as the Court of Special Appeals held, that this is not a "case of police misconduct or negligence," implicating the exclusionary rule. Also, like the Court of Special Appeals, it asserts that "it is the amount of time which elapses between the time that the warrant ... becomes invalid and the time of the arrest which primarily determines whether probable cause exists for a valid warrant." *Ott*, 85 Md. App. at 645–46, 584 A.2d at 1243. Thus, the State proffers that "[b]ecause the erroneous information remained in the computer only four days longer than it should have, it is inappropriate to apply the exclusionary rule."

Neither *Riley*, nor *Childress*, the cases upon which the State relies, is persuasive. Both involved arrests based upon warrants that, although previously satisfied, had not been removed from the computerized "active" list. In *Riley*, the computer was that of the National Crime Information Center (NCIC), not the Philadelphia Police Department, and the court recognized that there was no indication that the Philadelphia Police were responsible for NCIC's failure to update the information. *Riley*, 425 A.2d at 816. Because police may reasonably rely upon an NCIC report of an outstanding arrest warrant and juvenile detainer in making a warrantless arrest, 425 A.2d at 816, the court held that the information subsequently proven wrong and stale by only four days was insufficient to negate the probable cause otherwise provided by the NCIC report. *Id.* Without adopting the merits of the distinction drawn by *Riley*—that the source of the erroneous information is dispositive, the case *sub judice*, is nevertheless distinguishable on that basis, *i.e.*, as we have seen, the computer in this case was that of the Sheriff's Department, which, consequently, had the responsibility of updating the information in it.

In *Childress*, the case upon which *Riley* relied, the erroneous information was the result of the District of Columbia Police Department's failure to remove a satisfied warrant from its "active" list. 381 A.2d at 616. Notwithstanding, the court held that "the police officer's good faith reliance on the radio report and the resultant reasonable belief that valid traffic warrants were outstanding provided probable cause to arrest appellant Childress." *Id. Whiteley* was not controlling, it asserted, because the warrant in that case "never legally existed". 381 A.2d at 617. It then opined (at 617–18):

Administrative delays attendant to the operation of any metropolitan area police department resulted in failure to remove the satisfied warrants from the computerized "active" list before the officers received the radio dispatch on November 18 that the warrants were outstanding. This combination of reasonable administrative delay and reasonable police reliance on misinformation produced by such a delay presents a situation in which acceptance of appellants' position would do nothing to advance the purposes of the exclusionary rule. (Footnote omitted)

Apparently as a matter of law, the court concluded that a four day delay, two days of which occurred on the weekend, did not amount to "police administrative negligence." 381 A.2d at 617–18 n. 3.

We are not persuaded. The *Childress* court never addressed the critical distinctions drawn by *Whiteley*—whether the department is chargeable with knowledge that the information is outdated and is at fault for not having cleared the computer of the erroneous information. Moreover, it never explained why the delay in that case was reasonable. Furthermore, the conclusion reached by *Childress* presents an anomalous situation that, for some period of time, a police department's failure to maintain accurate records, without explanation, may lawfully place citizens at risk. We are not prepared to reach such a conclusion

without, at the very least, some indication that the department's omission or failure is reasonable.[3]

■ The record is devoid of evidence, or, for that matter, any attempt to introduce evidence, tending to establish the amount of time it reasonably would, or should, have taken to clear the computer of executed warrants. The Court of Special Appeals held as a matter of law, reasoning from cases upholding arrests based on similar outdated information, that a "net" delay of four days [4] in clearing a computer of outdated information is not sufficient to amount to police misconduct or negligence implicating the application of the exclusionary rule. That determination, however, is not one that may be made as a matter of law. The question whether a lapse of time was sufficiently short so that reliance by the police may properly be considered reasonable and in good faith may be a mixed question of law and fact. Moreover, the burden to establish the facts underlying that determination rests with the State. *Stackhouse v. State*, 298 Md. 203, 217, 468 A.2d 333, 341 (1983) (Burden of proving exigent circumstances is on the State); *Bouldin v. State*, 276 Md. 511, 515, 350 A.2d 130, 133 (1976) (Burden on State to show that lawful arrest occurred prior to search alleged to be incident thereto). And the good faith excep-

---

**3.** The distinction between the case where, although the information in the police department's possession was erroneous, that fact was known, not to a police officer, but, rather, to a third party who did not inform the police that the information was erroneous, and the case where the police know or should know that information upon which they rely is erroneous is significant. *Carter v. State*, 18 Md.App. 150, 154 n. 1, 305 A.2d 856, 859 n. 1 (1973). Thus, the cases of *United States v. De Leon–Reyna*, 930 F.2d 396 (5th Cir.1991) (*en banc*), in which the good faith exception was applied to uphold a warrantless arrest based on reliance upon mistaken license plate information, and *Durio v. State*, 807 S.W.2d 876 (Tex.Cr.App.1991), in which the good faith exception was applied to uphold reliance by police officers upon an invalid warrant which was, however, facially valid, do not support the Court of Special Appeals' decision. In both cases, a third party was the actor, not the police department.

**4.** As previously noted, the total delay was seven days, but two of those days were on a weekend and a third was a holiday.

tion does not serve to excuse the State of that burden. Since the State failed to meet its burden of going forward with evidence as to the amount of time reasonably required to clear the computer of outdated information, not to mention the burden of persuasion on the issue, the trial court properly suppressed the evidence; consequently, the judgment of the Court of Special Appeals must be reversed.[5]

### B.

■ Notwithstanding the illegality of petitioner's arrest, the State maintains that petitioner lacked standing to challenge the search of his companion's automobile. It argues, therefore, that the Court of Special Appeals erred in assuming, *albeit arguendo,* that he did. This argument must proceed on the premise that at issue is the legality of a car search *qua* car search, see the State's citation to, *inter alia, Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and its reliance upon *California v. Acevedo,* 500 U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *New York v. Class,* 475 U.S. 106, 112–13, 106 S.Ct. 960, 965, 89 L.Ed.2d 81, 89–90 (1986); *South Dakota v. Opperman,* 428 U.S.

---

**5.** The determination whether it is reasonable or unreasonable for outdated information to remain in a computer must be made after consideration of the totality of the circumstances. One of the circumstances is whose responsibility it is to keep information in the computer current. We point out that, where the right of citizens to be free from an illegal arrest is at stake, because infringement upon the rights of the citizenry will not be lightly tolerated, the State's burden is heavy. In that regard, we observe that the dispatch with which a police department acts in putting information into its computer system should serve as a guide as to the dispatch with which it should be required to act in taking information out of the system. The State acknowledged at oral argument that it does not take a lot of time to enter warrant information into a computer, certainly not seven days, or even four days; it should take no longer to remove information from the computer than it takes to put it in. We also wonder whether the occurrence of a weekend or holiday has any real relevance to the question of the reasonableness of a delay in clearing a computer of outdated information. Unlike a business in the private sector, a police department ordinarily is a 24–hour a day, seven days a week and holiday operation. Therefore, strong evidence should be required to justify omitting holidays and weekends in computing the delay.

364, 368, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1005 (1976); *Doering v. State,* 313 Md.. 384, 399, 545 A.2d 1281, 1288 (1988). Thus, it is understandable that the State asserts that petitioner failed to show that he had a legitimate expectation of privacy in the automobile. *See Ricks v. State,* 312 Md. 11, 26, 537 A.2d 612, 619, *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). As to the latter contention, it also says that petitioner did not establish his standing to challenge the search by merely showing that he was seated in the driver's seat; he needed to show, in addition, that he had driven the car or to produce evidence that he had control over, or an expectation of privacy in it.

The search in this case was one incident to arrest, as the Court of Special Appeals held, 85 Md.App. at 647, 584 A.2d at 1274, and the State, in its brief, concedes. Such a search is lawful to the same extent as the arrest pursuant to which it was undertaken; if the arrest is illegal, the search incident to that arrest is also illegal. *Trusty v. State,* 308 Md. 658, 661 n. 2, 521 A.2d 749, 750 n. 2 (1987); *Stanley v. State,* 230 Md. 188, 191, 186 A.2d 478, 481 (1962); *Dipasquale v. State,* 43 Md.App. 574, 575, 406 A.2d 665, 666 (1979); *Dixon v. State,* 23 Md.App. 19, 26, 327 A.2d 516, 521 (1974). *See also Bouldin v. State,* 276 Md. 511, 515, 350 A.2d 130, 132 (1976). In this case, but for petitioner's arrest, the police would have had neither the occasion nor, presumably, any cause to conduct a search of the car—according to the evidence, petitioner and his companion did nothing criminal in the officer's presence. Because it was as a result of official intrusion on petitioner's personal Fourth Amendment right, *Rakas v. Illinois,* 439 U.S. at 133–34, 99 S.Ct. at 425, 58 L.Ed.2d at 394–95, *i.e.* his right to be secure from an illegal seizure of his person, that the search was undertaken, which intrusion has been determined to have been illegal, petitioner must have the right to point out that the search incident to his arrest is, like the arrest, illegal and to move to suppress the fruits of that search.

In *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court made clear that "fruit of the poisonous tree", *id.* at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 454, "bar[s] from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." 371 U.S. at 485, 83 S.Ct. at 416, 9 L.Ed.2d at 454. Thus, where contraband is "come at by exploitation of [a primary] illegality," 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455, quoting Maguire, *Evidence of Guilt*, 221 (1959), rather than from a source distinguishable from, and, therefore, purged of the taint, it must be suppressed and may not be used against the petitioner. *Id.* The exploitation of a primary illegality does not refer only to an illegal search; it may refer to an unlawful seizure of the person. *See, e.g., United States v. Erwin*, 875 F.2d 268, 269–70 (10th Cir.1989), in which the court recognized the distinction to be drawn between "standing to challenge a stop and standing to challenge a search." The court pointed out, citing, *inter alia, Wong Sun*, 371 U.S. at 484, 83 S.Ct. at 415, 9 L.Ed.2d at 453, that "[e]ven if defendant lacks standing to challenge the search of the car, if the initial stop was illegal, the seized contraband is subject to exclusion under the 'fruit of the poison tree' doctrine." 875 F.2d at 269 n. 2.

In *United States v. Hill*, 855 F.2d 664, 666 (10th Cir.1988) the court excluded evidence seized incident to an illegal arrest. Other cases and treatise writers have gone even further. *E.g. United States v. Durant*, 730 F.2d 1180, 1182 (8th Cir.1984) (recognizing that a passenger in an automobile that is stopped may, on the basis that it was illegal, move to suppress evidence uncovered as a direct result of the stop); *United States v. Williams*, 589 F.2d 210, 214 (5th Cir.1979) (same); *State v. Haworth*, 106 Idaho 405, 679 P.2d 1123, 1123–24 (1984) (same); *People v. Manke*, 181 Ill. App.3d 374, 130 Ill.Dec. 192, 194, 537 N.E.2d 13, 15 (1989) (same); *State v. Eis*, 348 N.W.2d 224, 225–27 (Iowa 1974) (same); *State v. Epperson*, 237 Kan. 707, 703 P.2d. 761, 770 (1985); *People v. Smith*, 106 A.D.2d 525, 483 N.Y.S.2d 62,

63 (1984) (same); *State v. Scott,* 59 Or.App. 220, 650 P.2d
985, 987 (1982) (same); *State v. DeMasi,* 419 A.2d 285, 294–
95 (R.I.1980), *vacated on other grounds,* 452 U.S. 934, 101
S.Ct. 3072, 69 L.Ed.2d 948 (1981) (same); *see also* 1 LaFave
and Israel, *Criminal Procedure* § 9.1, 422 (1985), in which
it is said:

> that a passenger does have standing to object to police
> conduct which intrudes upon his Fourth Amendment pro-
> tection against unreasonable seizure of his person. If
> either the stopping of the car or the passenger's removal
> from it are unreasonable in a Fourth Amendment sense,
> then surely the passenger has standing to object to those
> constitutional violations and to have suppressed any evi-
> dence found in the car which is their fruit.

Setting aside the question whether, under these circum-
stances, the petitioner had a legitimate expectation of priva-
cy in his companion's car, he clearly has an interest in being
free from an illegal seizure of his person, a matter of
legitimate concern. *See United States v. Cortez,* 449 U.S.
411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621, 628 (1981).
As to that, petitioner has a "legitimate expectation that [he]
would be free from the unreasonable governmental intru-
sion occasioned by [his arrest]." *DeMasi,* 419 A.2d at 294.
*Hill* is illustrative. In that case, the defendants argued
that their arrests were unlawful and, therefore, the search
conducted incident thereto was also illegal. They also ar-
gued that the fruits of a search conducted pursuant to a
search warrant issued on the basis of information derived
from their illegal arrests should have been suppressed as
fruit of the poison tree. 855 F.2d at 666. The court
recognized that its determination of those questions turned
on the legality of the arrests. *Id.* Before addressing that
issue, however, it rejected the government's argument that
one of the defendants did not have standing to challenge
the legality of the search, which was of a houseboat that he
did not own. It explained:

> We hold that no showing of a privacy interest is neces-
> sary under the facts of this case. The main thrust of

Hill's argument is that his warrantless arrest violated the Fourth Amendment and that all evidence obtained as a result of the arrest is therefore tainted and must be suppressed. Hill clearly may challenge the validity of his own arrest. We hold that he may therefore claim that evidence found as a fruit of the arrest should be excluded.

*Id.* To like effect is *Epperson,* in which the court recognized that:

Epperson's right to challenge the search stems not from the fact that he was previously a passenger in the motor vehicle, but because he is a person who was unlawfully stopped and seized, and because the search followed as a consequence thereof.

703 P.2d at 770.[6]

In *Rakas,* the issue was whether the Fourth Amendment rights of the occupants of an automobile, stopped because it was believed to be the get-away car used in a robbery, who did not assert a proprietary or possessory interest in the car or its contents, had been violated so that they could object to the search of the car and the seizure of a rifle and shells that the search uncovered. The defendants did not challenge the legality of the stop of the automobile or contend that they had been seized when they were told to get out of the car. *See* 439 U.S. at 150–51, 99 S.Ct. at 434, 58 L.Ed.2d

---

**6.** A noted commentator has suggested that the "fruit of the poisonous tree" analysis is not always appropriate when a search is conducted "incident" to an arrest:

When the search of the person or the surrounding area has its only justification as being "incident to" the arrest under *Chimel v. California* [395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)] then unquestionably the evidence found in the search must be suppressed if the antecedent arrest was in violation of the Fourth Amendment. This is direct rather than derivative evidence, and there is no occasion to be concerned about the limits of the fruit of the poisonous tree doctrine.

4 W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 11–4(d), 408 (2nd ed. 1987). Whether, therefore, the evidence is viewed as direct or derivative, it may be challenged because the predicate for its discovery was an illegal arrest.

at 405–06 (Powell, J. concurring). It was under these circumstances that the Supreme Court affirmed the judgment of the Illinois Appellate Court. The Court was of the view that the "question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it." 439 U.S. at 140, 99 S.Ct. at 429, 58 L.Ed.2d at 399. It held that, because they made no showing that "they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers," 439 U.S. at 148, 99 S.Ct. at 433, 58 L.Ed.2d at 404, the defendants' Fourth Amendment rights had not been violated and they could not assert those of the owner of the car or its contents. 439 U.S. at 133–34, 99 S.Ct. at 425, 58 L.Ed.2d at 394–95. Thus, the Court found the issue more appropriately analyzed under the substantive Fourth Amendment right rather than on the basis of traditional notions of standing. 439 U.S. at 140, 99 S.Ct. at 428, 58 L.Ed.2d at 399. *See also Scott,* 650 P.2d at 987. In that regard, then, the *Rakas* analysis is consistent with the result we reach here. It is also inapposite since, in the instant case, by virtue of his arrest, the personal Fourth Amendment rights of the petitioner were infringed. *Williams,* 589 F.2d at 213–14; *Haworth,* 679 P.2d at 1124; *DeMasi,* 419 A.2d at 294.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO FURTHER REMAND THE CASE TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR DISMISSAL OF THE CHARGES AGAINST PETITIONER.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY FREDERICK COUNTY.

MURPHY, C.J., dissents.

MURPHY, Chief Judge, dissenting.

On the facts of this case, giving full sway to the intended reach of the "good faith" exception so clearly articulated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), I would affirm the judgment for the reasons stated by the Court of Special Appeals. The arresting officer's conduct was objectively reasonable. To exclude the evidence in this case does not further the ends of the exclusionary rule in any appreciable way. While I share the majority's concern that the police-operated computer should promptly reflect the satisfaction of an outstanding warrant, I do not believe that the delay in this case amounts to such police misconduct or negligence as warrants the result reached by the Court. *See* e.g., *Connelly v. State,* 322 Md. 719, 589 A.2d 958 (1991). Nothing in *Whiteley v. Warden,* upon which the majority places such stress, mandates the reversal of the judgment in this case.