Commonwealth of Virginia

v.

Robert Gaynor

February 28, 1994

Case No. (Criminal) 081949

BY JUDGE THOMAS A. FORTKORT

This case arose on appeal of a Driving on a Suspended License conviction from General District Court. Defendant, Robert Gaynor, moved to suppress evidence obtained in an investigatory stop of his automobile. The Court took the matter under advisement. For the reasons stated below, the Court sustains defendant's motion to suppress.

The facts giving rise to this matter are outlined in the parties' memoranda. Fairfax County Police Officer B. J. Sonnenberg was on patrol in the early morning hours of February 18, 1993. As was his routine, he was conducting records checks on the vehicles parked outside a Burke dining establishment. Upon entering the license plate "*MTQ 831*," the number the officer believed to be on defendant's plate, Officer Sonnenberg received information that the license number was registered to a different vehicle, a Nissan Pathfinder. Meanwhile, the officer observed defendant enter his vehicle, a Chevrolet van, and exit the parking lot. Officer Sonnenberg then effected a stop on defendant, requesting that defendant hand over his vehicle registration. The officer then noticed that both registration and license plate read "*MIQ 831*." After running a check of the correct license number, Officer Sonnenberg arrested defendant for driving on a suspended license.

The question before the Court is whether evidence obtained through an investigatory stop is admissible when the stop is precipitated by an erroneous records check resulting solely from the negligence of the officer on site.

The United States Supreme Court has held that detaining officers must comply with a "reasonable suspicion" standard when making investigatory stops. *United States v. Cortez*, 449 U.S. 411 (1981). In evaluating whether an officer has reasonable suspicion, a court must look to the "totality of the circumstances," that is, an officer must have "a particularized and objective basis for suspecting that the vehicle stopped is engaged in criminal activity . . . although this need not rise to the level of affording probable cause for arrest or search." *Cortez*, 449 U.S. at 695, 697. In the present case, there simply are no other circumstances to contemplate. Officer Sonnenberg testified that his only reason for stopping defendant's vehicle was his erroneous conclusion that defendant was driving a vehicle with an illegal license plate.

A review of the case law reveals that courts have drawn a distinction between situations in which an independent entity is responsible for the erroneous information provided to police and those in which the information is derived from the police department's own inaccurate or incomplete records. In *Carter v. State*, 305 A.2d 856 (1973), an officer, proceeding on information in police records indicating a stolen vehicle, effected a stop of that vehicle and arrested the occupants for possession and control of narcotics. It was later discovered that the information had been wrong at the time of the stop; the car deemed stolen had been recovered several months prior and the stolen automobile report had never been rescinded. The court held that the officer did not have probable cause because the information, generated entirely by the police department, was false.

On similar facts, *People v. Joseph*, 470 N.E.2d 1303 (1984), involved an officer who acted on an arrest warrant which had been recalled ten days earlier. Invalidating the arrest, the court held that "during this period of time defendant was subject to arrest through no fault of his own and . . . in this age of computerization, we do not believe it would be appropriate to sanction the arrest here, thereby allowing for law enforcement officials to rely on an error of their own making . . . ." *Joseph*, 470 N.E.2d at 1306. Likewise in *Ott v. State*, 600 A.2d 111 (Md. 1992), police on routine patrol spotted defendant's car in an otherwise deserted parking lot. Upon making an initial records check, the officers discovered an outstanding bench warrant for the defendant. Ordering defendant's passenger out of the vehicle, officers found evidence of cocaine and other drug paraphernalia. Subse-

quent to the arrest, it was determined that the bench warrant had been previously satisfied. Charging the police with the error the *Ott* court held, "placing accurate and current information into the computer, just as taking inaccurate or outdated information out, is a function performed by personnel in the Sheriff's Department. Allowing outdated, inaccurate information to remain in the computer, thus, placing citizens at risk of being deprived of liberty, without legal basis, therefore, is the fault of the Sheriff's Department." *Ott*, 600 A.2d at 117.

On the contrary, courts are more willing to validate those searches, arrests, and stops in which the police are merely acting on incorrect information provided by a wholly separate organization. In *State v. Lanoue*, 587 A.2d 405 (Vt. 1991), the Department of Motor Vehicles was the source of information that defendant was driving on a suspended license. The court found the erroneous information was not chargeable to the police department because the DMV, as an independent organization, had statutory authority to regulate the licensing of drivers and to keep complete records concerning the status of registrations and drivers' licenses. Because the DMV was not "under the control of law enforcement agencies" defendant's driving while intoxicated conviction was affirmed. *Lanoue*, 587 A.2d at 407. *State v. Ewoldt*, 448 N.W.2d 676 (1989), concerned an investigative stop based on information provided by the Iowa Department of Transportation. Reasonable suspicion was sustained in this case mainly because the court determined that responsibility for developing the information was entrusted by statute to a department distinct from the police department.

In this case, the evidence confirms that the negligent entry of the license tag into the police computer is attributable solely to the officer. Officer Sonnenberg was not relying on erroneous information provided by a source outside the police department but made the mistake himself.

The Commonwealth cites *United States v. DeLeon-Reyna*, 930 F.2d 396 (5th Cir. 1991), for the proposition that the good faith exception to the exclusionary rule should apply to an officer who in good faith reliance on incorrect information received over his radio makes an investigatory stop of a vehicle. In that case, a U.S. border agent effected a stop of a suspicious-looking welding truck on a known drug smuggling route in close proximity to the border. *DeLeon-Reyna* is distinguishable, however, in that the circumstances surrounding that

stop provided the agent with adequate reasonable suspicion independent of the inaccurate information received over the radio. Accordingly, even though the error is in "good faith," the good faith exception to the exclusionary rule is not applicable when the officer himself is the architect of the error rather than when the officer acts in good faith reliance on information erroneously supplied by others.

Therefore, the Court sustains defendant's motion to suppress the evidence.