COMMONWEALTH of Kentucky,
Appellant,

v.

Louis VAUGHN, Appellee.

No. 2002–CA–002091–MR.

Court of Appeals of Kentucky.

Aug. 22, 2003.

Case Ordered Published by
Court of Appeals Sept. 19, 2003.

Albert B. Chandler III, Attorney General of Kentucky, Michael L. Harned, Assistant Attorney General, Frankfort, KY, for appellant.

Michael L. Judy, David J. Guarnieri, Johnson, Judy, True & Guarnieri, Frankfort, KY, for appellee.

Before EMBERTON, Chief Judge; McANULTY, Judge; and HUDDLESTON, Senior Judge.[1]

## OPINION

McANULTY, Judge.

The Commonwealth appeals an order of the Franklin Circuit Court which granted appellee Louis Vaughn's motion to suppress all evidence seized as a result of his arrest. We vacate and remand.

On October 12, 2001, Officer Charles of the Frankfort Police received a dispatch from the police department to serve an

---

**1.** Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

arrest warrant on appellee at the Corvettes Lounge for violation of a Domestic Violence Order (DVO). Officer Charles and Officer Abrams proceeded to the bar shortly before 8:00 p.m. They arrived at the same time as appellee's wife. She told Officer Abrams that she had seen appellee go into the building, and he had a warrant out for his arrest. She advised the officer that appellee kept cocaine in the watch pocket of his jeans.

The officers next spoke to the manager of the establishment, Steven Sims, and asked him about appellee. They told him they had an arrest warrant for appellee. Sims told them that appellee had already been arrested that day. He showed them where appellee was. The officers went inside to talk to appellee, and the manager allowed them to use his office. Once in the office, appellee informed them that the warrant had already been served and he had the paperwork to substantiate that in his truck.

Officer Charles radioed dispatch. He confirmed that they possessed a warrant for appellee's arrest. The officers placed appellee under arrest and handcuffed him. Officer Charles stated at the hearing that he would not go to appellee's vehicle to check his paperwork as a matter of "common practice." He stated this was for safety reasons—appellee could have had someone to assist him at his vehicle or could have had a weapon in the vehicle. The officers' search incident to arrest revealed cocaine in the watch pocket of appellee's jeans. Officer Charles placed appellee in his vehicle, drove to the dispatch office to retrieve the warrant, then took it and appellee to jail. Appellee was subsequently indicted by a grand jury for possession of a controlled substance.

Appellee, in fact, had been arrested earlier on that same day by a member of the Sheriff's Department. That arrest occurred in the afternoon at about 5:30 p.m. Appellee was released on bond at the time of the second arrest on the DVO.

Appellee filed a motion to suppress the evidence obtained in the search incident to arrest on the ground that the warrant on which he was arrested was not valid and his arrest was illegal. The trial court held a hearing on the motion. Following the hearing, the trial court entered an order in which it held that the warrant on which appellee was arrested had already been served and therefore it was not valid. The trial court granted the motion to suppress.

■ On appeal, the Commonwealth argues that the trial court erred in granting the motion to suppress. The Commonwealth argues that appellee's arrest by police two and a half hours after he was arrested on the same warrant by the sheriff's department was reasonable; therefore, the search incident to arrest should be upheld. The Commonwealth maintains that the error in the dispatch of the police department was "attributable to the administrative delay attendant to the operation of any law enforcement agency." The Commonwealth asserts that the officers executing the arrest warrant had no reason to suspect the information was inaccurate.

Appellee argues that we must charge the officer with the collective knowledge of other officers who were aware that the warrant had already been served. *See Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Appellee further argues that the good faith exception to the exclusionary rule should not apply because the police officer did not inform himself as to the validity of the warrant by checking the paperwork in appellee's car after he was handcuffed.

■ In this case, the warrant was not valid. There is no case law addressing

this issue in Kentucky. We agree with the widely used concept that law enforcement officers can be held to the collective knowledge of other officers. Additionally, courts generally concur that the " 'collective knowledge' rule cannot function solely permissively, to validate conduct otherwise unwarranted; the rule also operates prohibitively, by imposing on law enforcement the responsibility to disseminate only accurate information." *People v. Ramirez*, 34 Cal.3d 541, 194 Cal.Rptr. 454, 668 P.2d 761, 764–765 (1983). *See also, Ott v. State*, 325 Md. 206, 600 A.2d 111, (1992); *State v. White*, 660 So.2d 664 (Fla.1995).

The Commonwealth and appellee cite a number of cases from other jurisdictions which have dealt with the issue of an arrest and search based on a satisfied or otherwise canceled warrant. The courts focused on such variables as the amount of time which had elapsed since the warrant was valid, the existence of other probable cause for an arrest or a search, and police assessments of the error rates of the records they rely on. *See* Annotation, *Arrest Based on Outdated Records*, 45 A.L.R.4th 550, § 2, 1986 WL 361579 (1986). From those factors, and the range of facts, those courts arrived at varying conclusions as to whether the evidence of the search had to be suppressed.

One rule distilled from this varied precedent was stated by Professor LaFave in his Search and Seizure treatise. He suggests that the subsequent arrest need only be invalidated when the arresting officer acts pursuant to information in the law enforcement records which remains improperly in the system through the fault of the police or some other government official acting in a law enforcement capacity with the police. Professor LaFave states that the point is not that probable cause is lacking, but "the point is that the police may not rely upon incorrect or incomplete information when they (or perhaps some other government official) are at fault in permitting the records to remain uncorrected." LaFave, 2 Search and Seizure sec. 3.5(d), at 636 (1978), (2003).

On this issue, the courts addressing the question agree that the prosecution must be required to develop evidence on whether the police properly met their duty to keep their information updated and accurate. The burden of proof is properly placed on the prosecution to show that the information was cleared from the system in a timely manner. *Ott v. State*, 600 A.2d at 119.

In the case at bar, Officer Charles testified that there is some interagency coordination between his department and the sheriff's department concerning warrants. He testified that the two agencies share lists of warrants, and as a warrant is served by one or the other agency it is marked off the list. Officer Charles provided no testimony as to how quickly the information is shared with the other agency and when a warrant may be marked off the list.

However, we presume that this process is not instantaneous. In *Commonwealth v. Riley*, 284 Pa.Super. 280, 425 A.2d 813 (1981), the Pennsylvania Superior Court deemed a much longer period to raise no inference of wrongdoing by police: "Certainly, police misconduct cannot be inferred when the outstanding arrest warrant and juvenile detainer were satisfied only four days before the NCIC check." *Id.* at 816. Although, in this case the warrant list was local, rather than the NCIC national computer, we concur that some time must be allowed to accomplish the update.

Examining cases of this type from other jurisdictions, we find that courts routinely hold the police will not be considered at fault when the records are not current by

a matter of a few *days.* *Commonwealth v. Riley*, 425 A.2d at 816 (four days); *In re R.E.G.*, 602 A.2d 146, 149 (D.C.1992)(three days, not reasonable to require instant update); *Harvey v. State*, 266 Ga. 671, 469 S.E.2d 176 (1996) (four days). *But cf., Ott v. State*, 600 A.2d at 117–119 (four days too long; failure to update places citizens at risk, police must show delay reasonable) and *State v. White*, 660 So.2d at 667–68 (four days; failure to update was police negligence which should be deterred).

 We believe that the collective knowledge rule is applicable in cases where a warrant has already been served or is otherwise invalid. Nevertheless, we do not believe it would be reasonable or fair to hold the police to collective knowledge of the warrant if, during the time in question, it was not possible to disseminate that "knowledge" to other officers who might use it. In this case, the court made no finding as to whether it had been possible to clear the warrant from the shared list before Officer Charles acted. As a consequence, we vacate and remand this case to the trial court for findings of fact as to the regular procedure in removing inactive warrants from the agencies' system at that time. In addition, it may be necessary to explore whether in this case the sheriff's department followed the proper procedure in a timely manner after it served the warrant. This will provide a basis for the court's determination whether it is reasonable to hold the officers to the knowledge that the warrant was previously served and invalid.

ALL CONCUR.