664 A.2d 476

**In re ALBERT S.**

**No. 2079, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 8, 1995.

378

George E. Burns, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Celia Anderson Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Andrew L. Sonner, State's Attorney for Montgomery County, Rockville, on the brief), for appellee.

Submitted before MOYLAN, BLOOM and DAVIS, JJ.

DAVIS, Judge.

This is an appeal from a judgment of the District Court for Montgomery County, sitting as a juvenile court, in which appellant Albert S. was found to be delinquent. Following an adjudicatory hearing, the court concluded that appellant committed four offenses: assault, resisting arrest, malicious destruction of property, and possession of alcohol by a minor. Appellant presents three questions for our review:

I. Did the trial court err in refusing to suppress the fruits of an illegal stop, illegal detention, illegal frisk and illegal arrest?

II. Did the trial court err in finding appellant guilty of assault and resisting arrest?

III. Did the trial court err in finding appellant guilty of malicious destruction of property?

## FACTS

Officer Michael Price of the Montgomery County Police testified to the following facts. During his off-duty hours, Officer Price worked part-time in the security offices of Great Hope Homes, an enclosed community of rental townhomes. The community's property management company hires off-duty police officers because the complex is considered "one of the county's open air drug markets" and non-residents tend to congregate on the property. No trespassing signs are posted at the entrance to the complex. When security personnel observe someone who does not appear to be a resident, they are required to "[m]ake an inquiry about their whereabouts, you know, where they were headed, check it against the list of people we were provided with ... and basically provide our

presence there." Prior to the events at issue here, Officer Price had worked at the complex for three months and knew many of the residents.

In the early morning hours of November 22, 1993, Officer Price was working security at the complex. Although not in uniform, he drove a marked police cruiser and carried his badge, his service revolver, and a police radio with open access to police channels. At approximately 12:30 a.m., the officer observed a car that he did not recognize attempting to leave the complex at a lawful rate of speed. The car was driven by Theresa Phillips. Appellant Albert S., who was seventeen years old at the time, rode in the passenger's seat.

Officer Price stopped the car and asked Phillips for her driver's license. As Phillips looked through her purse, the officer saw Albert trying to conceal something under the front seat. Officer Price asked Albert what he was doing, and appellant responded in a "belligerent" manner. The officer walked to the passenger's side of the car and opened the door. Officer Price again asked Albert what he was hiding and Albert replied, "none of your fucking business, she's got her license on the other side." Officer Price then ordered Albert out of the car. After Albert complied with that request, the officer observed an open can of "Red Bull" malt liquor beer on the floor.

Officer Price suspected that Albert was under the age of majority and asked for his identification. When Albert refused, the officer told him to put his hands on the car. Officer Price then decided to conduct a pat-down search because Albert "had a coat on, and . . . that's just something that I do. It's a safety issue for me." The officer felt two bulges in Albert's jacket, and asked Albert what they were. Albert replied, "you know what it is." Officer Price then reached into the pockets of Albert's jacket and removed two additional cans of beer.

Officer Price placed Albert under arrest and Albert resisted by locking his hands in an "isometric" position. After the officer placed a handcuff on one of Albert's wrists, Albert

made a "fake motion" as if he was going to hit the officer. In response, Officer Price struck Albert. While holding onto the handcuffs, Officer Price "grabbed" the police radio and called for help. Albert pushed up against the officer and the two men became entangled in the microphone cord. When Albert pulled away, the cord was stretched beyond its limits and the microphone "popped" off the cord.

Officer J. Carr responded to the call for backup and helped Officer Price drag Albert to a cage car. Albert attempted to kick the officers but did not make contact. When asked to describe Albert's demeanor, Officer Carr stated that he "appeared to be extremely intoxicated and combative and uncooperative. . . . [H]e was, you know, basically out of control." While being transported to the police station, Albert repeatedly slammed his head against the door of the cage car.

A third officer, Corporal Edward Caldwell, was present when Albert was processed at the police station. Corporal Caldwell testified that Albert was handcuffed to a table, and that he repeatedly struck both wrists very forcefully against an iron bolt on the table. Albert seemed to be having mood swings, and would alternate between laughing and crying. All three officers noticed a strong odor of alcohol, and opined that Albert was intoxicated. A sobriety test was not performed.

Angela Talley, a resident of Great Hope Homes, testified on appellant's behalf. When asked about her relationship to Albert, Ms. Talley stated that she had known Albert since he was eight or nine years old and "you could say he's like my grandson." At the time of the incident, Albert was living with Ms. Talley in a townhome shared by her four children, her three grandchildren, and her boyfriend. When Ms. Talley arrived at the scene, Albert was in handcuffs and his feet apparently were tied. Police were dragging him across the street by his arms. Ms. Talley asked if she could speak with Albert, but Officer Price denied her request.

Following an adjudicatory hearing, the judge found that

appellant committed the offenses detailed above.[1] After finding appellant to be delinquent, the judge placed appellant on probation and ordered him to perform four hundred hours of community service. The judge also ordered that appellant refrain from using drugs and alcohol and that he participate in a drug/alcohol education program. This appeal followed.

## LEGAL ANALYSIS

### I

Appellant first contends that the trial court erred when it refused to suppress the fruits of an illegal stop, illegal detention, illegal frisk, and illegal arrest. During the adjudicatory hearing, appellant moved to suppress the physical evidence seized by Officer Price, including the open can of beer seized from the car and the two cans seized from appellant's jacket. Appellant also moved to suppress certain testimony by Officers Price, Carr, and Caldwell, each of whom testified that appellant appeared to be intoxicated. We conclude that the initial stop was unlawful, and that the evidence at issue must be suppressed as the fruits of that Fourth Amendment violation. Consequently, we need not consider whether Officer Price acted unlawfully when he ordered appellant out of the car and conducted a pat-down search. For reasons set forth in part II, *infra*, we also conclude that the arrest was unlawful.

■ As a threshold matter, we reject the State's assertion that appellant "had no standing to complain about either the stop of the automobile or the seizure from him." The Supreme Court's fruit-of-the-poisonous-tree doctrine bars the use of physical, tangible evidence "obtained either during or as a direct result of an unlawful invasion." *Ott v. State*, 325 Md. 206, 225, 600 A.2d 111 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992) (quoting *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d

---

1. Appellant had also been charged with battery, but the judge found that appellant did not strike the officers.

441 (1963)). Professors LaFave and Israel have noted that a passenger in a car

> *does* have standing to object to police conduct which intrudes upon his Fourth Amendment protection against unreasonable seizure of his person. If either the stopping of the car or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit.

1 WAYNE R. LAFAVE AND JERALD H. ISRAEL, 1 CRIMINAL PROCEDURE § 9.1(d), at 726 (1984). *See, e.g., United States v. Durant,* 730 F.2d 1180, 1182 (8th Cir.), *cert. denied,* 469 U.S. 843, 105 S.Ct. 149, 83 L.Ed.2d 87 (1984) (holding that a passenger in a vehicle may move to suppress evidence uncovered as a direct result of an unlawful stop).

In *Ott,* 325 Md. at 219–23, 600 A.2d 111, police officers arrested the petitioner in the mistaken belief that there was an outstanding warrant for his arrest, and the Court of Appeals held that the arrest was unlawful. During a search incident to that arrest, police recovered three bags of cocaine from the glove compartment of the car that Ott was driving. *Id.* at 209–11, 600 A.2d 111. Notwithstanding the fact that Ott did not own the vehicle, the Court held that Ott had standing to challenge the search. The Court explained that "but for petitioner's arrest, the police would have had neither the occasion nor, presumably, any cause to conduct a search of the car...." *Id.* at 224, 600 A.2d 111.

A similar analysis applies to the case at hand. Appellant was detained when Officer Price stopped the car in which he was riding. At the time of the stop, the officer merely suspected that the occupants of the car might be trespassing. The sole justification for the search of the car was appellant's alleged attempt to conceal something under the seat. Even if we assume, for the sake of argument, that Officer Price had the reasonable suspicion necessary to conduct a search, the facts that gave rise to such a suspicion were obtained by

detaining appellant. Accordingly, appellant has standing to challenge both the legality of the initial stop and any evidence thereby obtained, including the open can of beer recovered from the car.

■ The Fourth Amendment to the United States Constitution guarantees the right of individuals to be secure against unreasonable searches and seizures. It applies to actions undertaken by the State, *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), but generally does not apply to the actions of private individuals. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921). In *Waters v. State,* 320 Md. 52, 58–59, 575 A.2d 1244, *cert. denied,* 498 U.S. 989, 111 S.Ct. 529, 112 L.Ed.2d 539 (1990), the Court of Appeals held that the Fourth Amendment did not apply to a search and seizure undertaken by a private security guard. The Court noted that security guards, in general, do not act with arrest or other police powers. "Without governmental powers, security guards are acting as private citizens when protecting property, and their private status is not altered because their interest in protecting property coincides with the public's interest in preventing crime generally." *Id.,* 320 Md. at 59, 575 A.2d 1244.

■ Relying on *Waters,* the State vigorously contends that State action was not involved in the present case because Officer Price was acting within the scope of his private duties as a security guard. The security guard in *Waters,* however, was not an off-duty police officer. Although the issue is one of first impression in Maryland, the courts of other states have consistently held that the Fourth Amendment must be applied to the conduct of an off-duty police officer whenever the officer "steps outside [the] sphere of legitimate private action." *Commonwealth v. Leone,* 386 Mass. 329, 435 N.E.2d 1036, 1041 (1982). Whether State action exists in a given case "is not measured by the primary occupation of the actor, but by the *capacity* in which he [or she] acts at the time in question." *State v. Woods,* 790 S.W.2d 253, 257 (Mo.Ct.App.1990) (quoting

*State v. Pearson,* 15 Or.App. 1, 514 P.2d 884, 886 (1973)) (emphasis added). *See also State v. Castillo,* 108 Idaho 205, 697 P.2d 1219 (Ct.App.1985); *State v. Ludvik,* 40 Wash.App. 257, 698 P.2d 1064 (1985).

In *Ex parte Kennedy,* 486 So.2d 493 (Ala.1986), an off-duty police officer employed as an exterminator removed a leaf from a plant in a home where he was working. The officer suspected that the plant was marijuana, and his suspicions were confirmed by laboratory analysis. The Alabama Supreme Court concluded that

> Officer Corley stepped out of his exterminator role and became a government agent when he examined the plants, took a leaf for verification, and memorized the name on Kennedy's mail for identification purposes. According to Corley's own testimony, he used the knowledge and skill acquired from his police training and experience to spot the marijuana.

*Id.* at 495. Consequently, the court held that the officer's conduct was governed by Fourth Amendment standards. *Id.* at 496.

In *Woods,* 790 S.W.2d 253, an off-duty sheriff's deputy was employed as a caretaker for property owned by the defendant. In the course of his duties as caretaker, the deputy entered a cabin, wherein he observed a marijuana cigarette in plain view and detected the odor of burnt marijuana. Thereafter, he conducted a search of the cabin and found additional marijuana in a chest of drawers. Although the deputy's initial entry was lawful, the Missouri Court of Appeals observed that he "proceeded beyond his duties as a watchman or caretaker by searching areas he was not otherwise authorized to enter." The court concluded that the deputy was acting in his capacity as a law enforcement officer, and held that his search of the cabin was subject to the restrictions of the Fourth Amendment. *Id.* at 259. *Compare State v. Walker,* 236 Neb. 155, 459 N.W.2d 527 (1990) (the Fourth Amendment does not apply when an off-duty police officer acted within his lawful authority as a landlord); *Castillo,* 697 P.2d 1219 (an off-duty police

officer who inadvertently discovered marijuana in a letter addressed to his brother-in-law was not acting as a government official when he opened the envelope); *People v. Wachter*, 58 Cal.App.3d 911, 130 Cal.Rptr. 279 (1976) (an off-duty deputy sheriff who discovered marijuana while visiting a farm with a friend was not acting in his capacity as a law enforcement officer); *Pearson*, 514 P.2d 884 (the Fourth Amendment does not apply where a police reserve officer discovered marijuana in a car during the course of his employment as an auto mechanic).

Although we have never addressed the precise issue presented here, we have applied a similar analysis in other settings. In *Leach v. Penn–Mar Merchants Ass'n*, 18 Md. App. 603, 308 A.2d 446, *cert. denied*, 269 Md. 761 (1973), an automobile accident occurred in the parking lot of a shopping center where an off-duty police officer was working as a private security guard. A witness who interfered with the officer's attempt to write an accident report and summons was subsequently arrested on charges of obstructing justice by interfering with a police officer. The witness brought a civil suit against the officer, in which he asserted claims for assault, battery, false imprisonment, and unlawful arrest. Because a private security guard is without authority to issue a summons, we held that the officer was engaged in a police department function rather than the business of his part-time employer. *Id.*, 18 Md.App. at 610, 308 A.2d 446.

In *Lodowski v. State*, 302 Md. 691, 490 A.2d 1228 (1985), *vacated on other grounds*, 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986), the Court of Appeals applied a similar analysis to a case where the defendant was sentenced to death for the murder of an off-duty Prince George's County police officer. At the time of his death, the officer was working as a private security guard. The propriety of the death sentence turned on whether the officer was "murdered while in the performance of his duties." *See* MD.ANN.CODE art. 27, § 413(d)(1) (1992 Repl.Vol., Supp.1994). Relying on a provision of the Prince George's County Code pertaining to the

duties of police officers,[2] the Court held that the officer was not acting in the performance of his official duties unless a matter requiring police action had come to his attention prior to the moment of his death. *Lodowski,* 302 Md. at 729–33, 490 A.2d 1228. The Court concluded:

> The State agrees that "the question of whether a law enforcement officer was acting 'in the performance of his duties' is a factual determination. . . ." And we agree with the State that such determination is "not settled by either the fact that the officer is off duty or has undertaken private employment to supplement his income." Rather the question is to be decided on the particular facts of each case.

*Id.* at 732, 490 A.2d 1228. *See also Sawyer v. Humphries,* 322 Md. 247, 259, 587 A.2d 467 (1991) ("Even though a police officer may be said to be 'on duty' all of the time, cases regularly hold that a police officer acts outside the scope of his employment when he acts for his own personal reasons and not in furtherance of his employer's law enforcement function.").

In the case at hand, the court asked Officer Carr about the status of off-duty Montgomery County officers who work as private security guards, and the following exchange took place:

> COURT: Okay, now are those officers, by your understanding, are they allowed to arrest and do all the normal functions as they would as though they're on duty?
>
> OFFICER CARR: It's my understanding that they have police powers, but I guess that it's just department policy

---

2. The code provided:

> Members of the Police Department are held to be always on duty, although periodically relieved from the routine performance thereof. They are subject at all times to order from the proper authorities and to call by citizens. The fact that they may be off duty shall not be held as relieving them from the responsibility of taking proper police action in any matter coming to their attention requiring such action.

*Lodowski,* 302 Md. at 730–31, 490 A.2d 1228 (quoting section 18–163 of the Prince George's County Code).

that another on duty officer would come and handle an arrest situation.

Unlike the situation in *Lodowski*, 302 Md. at 731–32, 490 A.2d 1228, the Montgomery County Code does not contain a provision stating that officers have a duty to take proper police action "in any matter coming to their attention requiring such action." The record before us does not include pertinent police department regulations or other evidence regarding the legal duties of a Montgomery County police officer.

Notwithstanding the testimony of Officer Carr, the juvenile court broadly found that Officer Price was acting in a private capacity. The judge stated:

> He was doing his job, it was a normal check. It was on a private road, in a private community, hired by a private community to [do] a job that reflected a public purpose. And a private purpose.

The judge did not expressly make a factual finding as to whether Officer Price was acting in a public or private capacity at the critical moments. Nonetheless, we think the testimony offered at trial supports but a single conclusion—at the time of the initial stop, Officer Price was acting as an agent of the landowner, in his private capacity as a security guard.[3] As Officer Price explained, his duties as a security guard required him to make inquiries of persons who entered the property to determine whether those persons were trespassing. The sole purpose of the initial stop was to make such an inquiry.

The fact that Officer Price was acting in a private capacity, however, is not dispositive of the Fourth Amendment issue. As we noted earlier, the officer was driving a marked police cruiser at the time of the events in question. Because the officer was acting under color of police authority, the Fourth Amendment must be applied to his actions.

---

**3.** For the purpose of the present appeal, we may limit our discussion to the initial stop. We need not determine whether Officer Price had a duty to take proper police action at some later point in the incident.

The Supreme Court of Minnesota reached a similar conclusion in *State v. Filipi*, 297 N.W.2d 275 (Minn.1980). The defendant in that case was arrested on drug-related charges by Minneapolis police officers acting outside their jurisdiction. Thereafter, police searched the defendant's car and removed a duffle bag containing a large brick of marijuana. Despite the fact that the officers were not within their jurisdiction, the court concluded that the arrest was lawful because the officers had made a valid citizen's arrest. *Id.* at 278. Nonetheless, the court held that the search of the car was prohibited by the Fourth Amendment. The court reasoned that the Fourth Amendment was applicable because the officers acted under color of police authority by displaying their uniforms and badges at the time of the search. *Id.* at 278–79.

In civil cases involving an alleged violation of the plaintiff's civil rights under 42 U.S.C. § 1983, federal circuit courts have generally concluded that state action is involved when an off-duty officer wears a uniform, displays a badge, or makes other assertions of police authority. *See Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir.1995) (off-duty officer wore his uniform and drove a marked squad car); *Lusby v. T.G. & Y. Stores*, 749 F.2d 1423, 1429 (10th Cir.1984) (off-duty officer flashed his badge and identified himself as a police officer), *cert. granted, judgment vacated*, 474 U.S. 805, *on remand*, 796 F.2d 1307, *cert. denied*, 479 U.S. 884; *Traver v. Meshriy*, 627 F.2d 934, 938 (9th Cir.1980) (off-duty officer displayed a police identification card and identified himself as an officer). In *United States v. McGreevy*, 652 F.2d 849, 851 (9th Cir.1981), by contrast, the Ninth Circuit held that an off-duty police officer was not acting under color of law when he searched a package during the course of his part-time employment with Federal Express. The Court emphasized that the officer "carefully separated" his part-time employment from his duties as a police officer. *Id.* He made no assertions of police authority during the course of his private employment. Moreover, the officer informed Federal Express that he would not

respond to requests from the company while performing his official duties.

By using a marked police cruiser, Officer Price was acting under color of police authority at all relevant times, despite the fact that he was not in uniform and did not identify himself as a police officer. In addition, Officer Price performed his private duties in close cooperation with the Montgomery County Police Department. *See generally* LaFave, 1 Search and Seizure § 1–8 (2nd ed. 1987) (explaining that the Fourth Amendment may apply to the acts of private parties when there is significant State involvement). The department provided Officer Price with the cruiser, as well as a portable police radio and open access to police channels. When Officer Price used the radio to call for help, other active duty officers responded as if the transmission was a call from "an officer in trouble." Unlike the Federal Express employee in *McGreevy,* Officer Price failed to separate his part-time employment from his official role as a police officer. Thus, the officer's conduct must be judged under Fourth Amendment standards.

■■■ In assessing whether the trial court properly denied appellant's motion to suppress, we must determine whether the initial detention of appellant was lawful. When an automobile and its occupants are stopped by police, the resulting detention constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments to the federal constitution, "even though the purpose of the stop is limited and the resulting detention quite brief." *Little v. State,* 300 Md. 485, 493, 479 A.2d 903 (1984). *See also Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *United States v. Martinez–Fuerte,* 428 U.S. 543, 556–58, 96 S.Ct. 3074, 3082–83, 49 L.Ed.2d 1116 (1976); *Snow v. State,* 84 Md.App. 243, 264–65, 578 A.2d 816 (1990). As a general rule, police may stop a vehicle only when they have a reasonable suspicion, supported by articulable facts, that criminal activity is afoot. *See United States v. Brignoni–Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) (discussing stops by border patrol officers in search of illegal aliens);

*Little,* 300 Md. at 493–95, 479 A.2d 903.[4] Articulable suspicion requires "some minimal level of objective justification" for making the stop. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *INS v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A mere hunch that criminal activity might be afoot will not suffice. *Derricott v. State,* 327 Md. 582, 588, 611 A.2d 592 (1992); *State v. Darden,* 93 Md.App. 373, 384–85, 612 A.2d 339, *cert. denied,* 328 Md. 447, 614 A.2d 974 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2459, 124 L.Ed.2d 673 (1993).

In the present case, Officer Price testified that Great Hope Homes had a reputation as an open-air drug market and that non-residents tend to congregate on the property. The officer further stated that he recognized many residents of Great Hope Homes, but did not recognize the car in question. No other justification for the stop was given. Those facts, standing alone, in no way distinguish the occupants of the car in question from the many legitimate, lawful guests who undoubtedly enter the property on any given day. Allowing police to detain a vehicle on the facts presented here would arbitrarily subject too many innocent visitors to an unwarranted invasion of their privacy. *Compare Derricott,* 327 Md. at 591–92, 611 A.2d 592 (holding that a drug courier profile was defined too broadly to constitute the basis for a reasonable suspicion); *Snow,* 84 Md.App. at 260–61, 578 A.2d 816 (the fact that a driver's route between Philadelphia and Washington was frequently used to transport drugs did not distinguish the driver from the many lawful motorists who also travel that route). Consequently, we hold that Officer Price did not have

---

4. The rule is subject to certain narrow exceptions. A properly-executed roadblock or checkpoint, for example, does not require a reasonable, articulable suspicion that the occupants of a specific vehicle are involved in criminal activity. *See Little,* 300 Md. at 498–501, 479 A.2d 903 (discussing the requirements for a suspicionless checkpoint stop); *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (upholding a sobriety checkpoint); *Martinez–Fuerte,* 428 U.S. at 556–60, 96 S.Ct. at 3082–84 (upholding a border patrol checkpoint). The "roving" patrol at issue here was plainly not within the checkpoint exception.

a reasonable suspicion that the occupants of the car were trespassing or were otherwise involved in criminal activity. Because the evidence at issue was obtained as a direct result of an unlawful detention, the trial court erred when it denied appellant's motions to suppress that evidence.

We recognize that, consistent with pertinent Montgomery County local law and police policy [Police Dept. Dir. 85–10, Montg. Cty. Police Dept. Field Oper. Manual], a benefit enures to the community when that community is conscious of a police presence resulting from departmental vehicles conspicuously maintained during off-duty hours at the private residences of law enforcement officers. While the use by Officer Price of his marked patrol car during the course of his private employment was not violative of Maryland law and was pursuant to policy promulgated in Montgomery County government, we believe that such use imposed upon the officer the necessity to be aware of his dual role and to comprehend that such use for a private purpose, while clearly discharging the duties of a police officer, in effect engaged all of the constitutional and other restraints and constrictions he would be obliged to comport with in his official capacity as a law enforcement officer for Montgomery County.

In the case at hand, Officer Price demanded that Theresa Phillips stop her car and produce her driver's license. She would only have been obligated, under Maryland law, to display her driver's license to a uniformed police officer who demanded it. *See* MD.CODE ANN.TRANS. (TR § 16–112(c) (1992 Repl.Vol.) (stating that an individual driving a motor vehicle shall display his or her driver's license "to any uniformed police officer who demands it."). Appellant was within his legal rights in refusing to respond to the officer's inquiry notwithstanding that his belligerence, at the very least, may have been foolish.

A police officer on active duty has legal authority to take certain actions toward and make certain demands of private citizens. Each citizen, in turn, is protected when accosted by a police officer by certain constitutional rights. Thus, we

believe it imperative that a private security guard, who by the use of his or her police vehicle and by the duties he or she undertakes to perform, has shifted his or her role and thereby acts as an agent for the State, must be mindful of his or her obligation to confer on those who come within the ambit of his or her law enforcement responsibilities all of the rights to which a citizen dealing with a police officer on active duty would be entitled. Stated otherwise, such an officer must be mindful that, when he or she acts under color of law while off-duty, he or she is subject to the Fourth Amendment and cannot circumvent the constitutional limitations on his or her conduct.

## II

Appellant next contends that he was arrested unlaw-fully and that the trial court erred when it found that he committed an assault and resisted arrest. At the outset, we note that appellant was not trespassing, nor was he charged with trespassing. Apart from a request for appellant's identi-fication, Officer Price made no attempt to ascertain whether appellant and his companion were lawfully on the property of Great Hope Homes. Nor was appellant arrested on charges of assault, as the actions that allegedly constituted an assault did not occur until *after* Officer Price attempted to arrest appellant. The sole ground for the arrest was the officer's belief that appellant was a minor in possession of alcohol, an act prohibited by MD.ANN.CODE art. 27, § 400A (1992 Repl. Vol.).

The pertinent statute provides that a person under the age of twenty-one may not have "any alcoholic beverage" in his or her possession, or under his or her "charge or control," subject to an exception not applicable here. Art. 27, § 400A. A violation of § 400A is deemed to be a civil offense, art. 27, § 403(a), and the maximum fine for a first-time offender is

$500. Art. 27, § 403(f)(1).[5] At the time of the arrest, Officer Price did not have probable cause to believe that any other offense had been committed. Consequently, the officer could do nothing more than issue a citation, art. 27, § 403(b), and the arrest at issue here was unlawful. *See Simpler v. State,* 318 Md. 311, 315–17, 568 A.2d 22 (1990) (holding that the petitioner could not have been arrested on charges of providing beer to minors).

■ The State contends that the arrest was justified as a valid citizen's arrest because appellant, "an apparent trespasser, had been found acting furtively, in possession of an open container of alcohol . . ., had used abusive language, and 'was actually getting combative.' " In *Great Atlantic & Pacific Tea Co. v. Paul,* 256 Md. 643, 655, 261 A.2d 731 (1970), the Court of Appeals explained that a private citizen is entitled to carry out a warrantless arrest when

a) there is a felony being committed in his [or her] presence or when a felony has in fact been committed whether or not in his [or her] presence, and the arrester has reasonable ground (probable cause) to believe the person he [or she] arrests has committed it; or b) a misdemeanor is being committed in the presence or view of the arrester which amounts to a breach of the peace.

We cannot agree that appellant committed a misdemeanor which amounts to a breach of the peace. His possession of alcohol, standing alone, was not a breach of the peace. With regard to the alleged "combative" conduct, appellant was legally privileged to resist Officer Price with reasonable force. As we explain below, appellant did not exceed the bounds of that privilege.

In *Monk v. State,* 94 Md.App. 738, 742, 619 A.2d 166 (1993), we observed that "an essential element of resisting arrest is that the arrest be lawful." *See also State v. Huebner,* 305 Md.

---

**5.** At the time of the adjudication and disposition below, the pertinent provisions were set forth in Art. 27, §§ 403A and 403B. By Ch. 483, Acts 1994, those sections were combined without substantive change into the present § 403.

601, 608, 505 A.2d 1331 (1986) (defining "resisting arrest" as "[a] refusal to submit to lawful arrest"); *Busch v. State,* 289 Md. 669, 675, 426 A.2d 954 (1981) ("the offense of resisting arrest ordinarily requires resistance to a lawful arrest made by an officer of the law in the performance of his official duties"). Because we conclude that the arrest at issue here was unlawful, we must also conclude that the trial court erred when it found that appellant resisted arrest.

 In Maryland, a person arrested illegally "may use any reasonable means to effect his [or her] escape, even to the extent of using such force as is reasonably necessary." *Rodgers v. State,* 280 Md. 406, 410, 373 A.2d 944 (1977), *cert. denied,* 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1978) (quoting *Sugarman v. State,* 173 Md. 52, 195 A. 324 (1937)); *State v. Blackman,* 94 Md.App. 284, 306–08, 617 A.2d 619 (1992); *Barnhard v. State,* 86 Md.App. 518, 527, 587 A.2d 561 (1991), *aff'd,* 325 Md. 602, 602 A.2d 701 (1992). Among other jurisdictions, the modern trend has been to abandon the rule, and we have questioned whether the original rationale for the right to resist is still viable. *See Monk,* 94 Md.App. at 742–45, 619 A.2d 166; *Blackman,* 94 Md.App. at 306–08, 617 A.2d 619; *Barnhard,* 86 Md.App. at 527, 587 A.2d 561. Nonetheless, the right to resist an unlawful, warrantless arrest remains the law of Maryland until the legislature or the Court of Appeals states otherwise. A person who acts within the bounds of that privilege does not commit an assault.

In the present case, Officer Price ordered appellant to place his hands on the car, and appellant responded by "just kind of holding ... his position." Officer Price then conducted a weapons frisk of appellant. After seizing two additional cans of beer, Officer Price told appellant that he was under arrest. Appellant then resisted by locking his hands together, and tried to pull away from Officer Price. Officer Price retrieved his handcuffs from the patrol car and got one handcuff on. It was then, and only then, that appellant made a "fake motion" as if he was going to hit Officer Price. While being dragged

to a cage car, appellant unsuccessfully attempted to kick the officer.

In his ruling, the trial judge found that appellant put Officer Price "in reasonable fear of being battered when, by his testimony you raised your hand as if you were going to punch him." Appellant did not actually strike Officer Price, and the judge found in appellant's favor on charges of battery. Under the circumstances, the degree of force used by appellant was not unreasonable, and his conduct was well within his common law right to resist an unlawful arrest. The juvenile court erred when it found that appellant committed an assault.

## III

Finally, appellant contends that the evidence was insufficient to support the juvenile court's finding that appellant committed acts amounting to the malicious destruction of property. When a juvenile petition filed by the State's Attorney alleges that a child has committed a delinquent act, the juvenile court must determine whether the allegations have been proven beyond a reasonable doubt. *In re Demetrius J.,* 321 Md. 468, 474, 583 A.2d 258 (1991). In assessing whether the evidence is sufficient to support the judge's finding, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the delinquent act beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Williams v. State,* 329 Md. 1, 15, 616 A.2d 1275 (1992); *McMillian v. State,* 325 Md. 272, 289–90, 600 A.2d 430 (1992). It is the task of the fact finder, rather than the reviewing court, to measure the weight of the evidence and draw any reasonable inferences from the proven facts. *McMillian,* 325 Md. at 290, 600 A.2d 430; *Pugh v. State,* 103 Md.App. 624, 651, 654 A.2d 888 (1995). Circumstantial evidence regarding one or more elements of the crime at issue may be sufficient, provided that "the circumstances are inconsistent with any reasonable hypothesis of innocence." *West v. State,* 312 Md. 197, 211–12, 539 A.2d

231 (1988); *Wilson v. State,* 319 Md. 530, 536–37, 573 A.2d 831 (1990).

 Appellant was charged with violation of MD.ANN. CODE art. 27, § 111 (1992 Repl.Vol. & Supp.1994), which states:

> Any person who shall wilfully and maliciously destroy, injure, deface or molest any real or personal property of another shall be deemed guilty of a misdemeanor.

In *Shell v. State,* 307 Md. 46, 68, 512 A.2d 358 (1986), the Court of Appeals made it clear that malicious destruction of property is a specific intent crime requiring more than a general intention to do the immediate act. Rather, the statute "requires both a deliberate intention to injure the property of another and malice." *Id.* at 68, 512 A.2d 358. It is not sufficient that the defendant merely intended to do the act which led to the damage; it is necessary that the defendant *actually intended* to damage the property in question. *In re Taka C.,* 331 Md. 80, 84, 626 A.2d 366 (1993).

In the present case, the alleged malicious destruction occurred during the struggle between Officer Price and appellant. The only evidence regarding appellant's intent was the testimony of Officer Price, who stated that he was holding appellant by the handcuffs as he attempted to call for assistance. After appellant then pushed up against the officer, "the microphone got entangled." On cross-examination, Officer Price explained:

> The radio got tangled in, uh, let's see, I'm holding the radio with my left hand. And, I'm holding onto a handcuff with my right hand. Uh ... he spins, to which would bring him in between myself and the car radio ... And, pushes up against me. At that point in time, that stretched the microphone further out tha[n] it can go, and pops the microphone from the microphone cable.

The State contends that the requisite criminal intent *must* be inferred from appellant's conduct. We disagree. Although the circumstantial evidence presented on the issue of appellant's intent supports an inference that appellant intended to

destroy the microphone, the evidence also supports an inference that appellant was merely attempting to escape from an unlawful arrest. Consequently, the evidence is consistent with a reasonable hypothesis of innocence, and no rational trier of fact could conclude, beyond a reasonable doubt, that appellant intended to destroy the microphone. The trial court erred when it found that appellant committed malicious destruction of property.

**JUDGMENTS OF THE DISTRICT COURT FOR MONT-GOMERY COUNTY REVERSED.**

**COSTS TO BE PAID BY MONTGOMERY COUNTY.**