DECISION AND JUDGMENT ENTRY
{¶ 1} Wayne Henson, ("Appellant"), appeals from his conviction of aggravated possession of methamphetamine, in violation of R.C. 2925.11, after a bench trial in the Highland County Court of Common Pleas. Appellant alleges that the trial court 1) erred in overruling his motion to suppress evidence seized from the vehicle he was accused of operating at the time of his arrest; 2) erred to his prejudice in conducting a bench trial without a written waiver of his right to trial by jury and in failing to rule on his pretrial motion to suppress statements; and 3) erred to his prejudice when it denied counsel's motions for a verdict of acquittal and when it rendered a verdict of guilty which was not supported by the credible, admissible evidence. While we find Appellant's first assignment of error to be without merit, we nevertheless vacate Appellant's conviction based upon our finding that the trial court was without jurisdiction to conduct a bench trial absent a written waiver from Appellant. As such, Appellant's third assignment of error is rendered moot. Accordingly, we remand to the trial court for further proceedings consistent with this opinion.
 {¶ 2} The record reveals the following facts pertinent to this appeal. On September 18, 2004, a deputy observed an unoccupied vehicle parked at a vacant residence in Highland County. When the deputy observed Appellant exit a garage on the property, he asked Appellant for identification and inquired as to why he was on the property. Appellant stated that his name was Wayne Henson and his brother owned the property. The deputy then requested identification and conducted a LEADS check, which showed an active warrant for Appellant's arrest from Brown County, the same county in which the deputy was employed. Because these events occurred in Highland County, the deputy notified the Highland County Sheriff's Department and then placed Appellant under arrest. However, later information revealed the warrant had been issued mistakenly and was invalid. A summons, rather than a warrant should have been issued, as Appellant had already appeared and posted bond on the other prior charge.
 {¶ 3} Despite Appellant's failure to admit to driving the vehicle and despite the fact that the vehicle was not registered to Appellant, the deputy obtained Appellant's consent to search the vehicle. Once the Highland County deputies arrived, a preliminary search of the vehicle was performed, which revealed a marijuana cigarette, as well as methamphetamine. A subsequent inventory search was conducted by another Highland County deputy prior to the vehicle being towed.
 {¶ 4} As a result of the foregoing, Appellant was indicted and charged with aggravated possession of methamphetamine, in violation of R.C. 2925.11, a felony of the second degree. The indictment was later amended to a felony of the third degree. Appellant filed separate motions to suppress both his statement and evidence. Following a hearing on the motions, the trial court denied Appellant's motions to suppress.[1]
 {¶ 5} The matter was set for jury trial on June 16, 2005. The morning of the scheduled trial, after a jury had been summoned, Appellant's counsel informed the court that Appellant wished to waive his right to jury trial and instead proceed with a trial to the court. Appellant orally waived his right to a jury trial and the court conducted a bench trial, ultimately finding Appellant guilty of the crime charged and sentencing Appellant to a two year term of imprisonment. As a result, Appellant filed his timely notice of appeal, assigning the following errors for our review.
 {¶ 6} "I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FROM THE VEHICLE HE WAS ACCUSED OF OPERATING AT THE TIME OF HIS ARREST.
 {¶ 7} II. THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE IN CONDUCTING A BENCH TRIAL WITHOUT A WRITTEN WAIVER OF DEFENDANT'S RIGHT TO TRIAL BY JURY AND IN FAILING TO RULE ON HIS PRETRIAL MOTION TO SUPPRESS STATEMENTS.
 {¶ 8} III. THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE WHEN IT DENIED COUNSEL'S MOTIONS FOR VERDICT OF ACQUITTAL, AND AGAIN WHEN IT RENDERED A VERDICT OF GUILTY WHICH WAS NOT SUPPORTED BY CREDIBLE, ADMISSIBLE EVIDENCE."
 {¶ 9} Appellant makes several arguments in support of his first assignment of error, which asserts that the trial court erred in overruling his motion to suppress evidence. Specifically, Appellant argues that 1) the trial court erred in finding that the only question raised by defendant's motion was whether the deputy's conduct was reasonable; 2) the court erred in finding that mere suspicion of criminal activity constituted "reasonable and probable cause to believe" that he was committing a felony; 3) his consent to search was not voluntary because it was elicited after an unauthorized arrest on an invalid warrant and was not preceded by Miranda warnings; 4) the search of the automobile after his arrest cannot be justified under the automobile exception to the warrant requirement when the officer had no probable cause to believe that evidence of a crime was contained in it; 5) the search of the automobile after his arrest cannot be justified as a routine inventory search under the circumstances; 6) the search of the automobile cannot be justified as incident to arrest without a valid basis for the arrest; 7) the search of the automobile cannot be justified by the "plain view" exception, because the officer's testimony indicated that he first arrested Appellant, then opened the car doors and searched inside before he saw any evidence; and 8) the arrest of Appellant and search of the automobile cannot be saved by the "good faith" exception, because the officers good faith reliance on an unlawful warrant doesn't supply probable cause for an arrest where none exists.
 I. {¶ 10} In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility.State v. Clay (1973), 34 Ohio St.2d 250, 298 N.E.2d 137. Accordingly, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the legal standard set forth inTerry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868.
 {¶ 11} The investigative stop exception to theFourth Amendment warrant requirement allows a police officer to stop an individual if the officer had a reasonable suspicion, based on specific and articulable facts, that criminal behavior has occurred or is imminent. Terry, supra; State v. Bird (1988),49 Ohio App.3d 156, 551 N.E.2d 622. In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which would warrant an officer of reasonable caution in the belief that the action taken was appropriate, i.e., that the accused is engaged or about to engage in criminal activity. Terry, supra, 392 U.S. at 19-20.
 {¶ 12} Appellant essentially challenges every stage in the entire process including the initial stop, subsequent detention and investigation, arrest, consent to search and the ultimate search of the vehicle and seizure of evidence. Appellant's arguments in support of suppression of evidence begin with the premise that his initial stop was not justified, arguing that the facts here did not create in the deputy a reasonable suspicion necessary for the initial stop.[2] Based upon the information contained in the record, we disagree.
 {¶ 13} The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus; State v.Freeman (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus; State v. Klein (1991), 73 Ohio App.3d 486,488, 597 N.E.2d 1141. In the case at bar, the deputy relied on his personal knowledge that the residence involved was vacant. The deputy knew the residence to be vacant because he regularly visits some people that live in that area and he had also been called to a fire occurring at the residence sometime in 2003. Therefore, based on the totality of the circumstances, we believe the deputy was justified in initially stopping Appellant.
 {¶ 14} Further, this court has held that "[n]oFourth Amendment seizure occurs when a law enforcement officer "merely approach[es] an individual on the street or in another public place, * * * ask[s] him if he is willing to answer some questions, [or] * * * questions * * * him if the person is willing to listen * * *. State v. Bennett (June 21, 2000), Ross App. No. 99CA2509, 2000 WL 821616; citing Florida v. Royer
(1983), 460 U.S. 491, 497, 103 S.Ct. 1319; see, also, Florida v.Bostick (1991), 501 U.S. 425, 434, 111 S.Ct. 2382 (stating that "mere police questioning does not constitute a seizure"). "Additionally, `no seizure occurs when police * * * ask to examine the individual's identification * * * so long as the officers do not convey a message that compliance with their requests is required." Bennett, supra, citing Bostick,501 U.S. at 437; see, also, Royer, 460 U.S. at 501. Here, although Appellant was not on the street or in a public place, he was not the owner of the private property where the initial encounter occurred and therefore, did not enjoy a heightened expectation of privacy.
 {¶ 15} Accordingly, we believe that the initial encounter of Appellant was consensual. The deputy permissibly approached Appellant and asked for identification. This Court has previously held that "[a]n officer need not possess reasonable suspicion or probable cause to initiate a consensual encounter." Bennett,
supra. Assuming arguendo that it was not a consensual encounter, based upon the totality of the circumstances, the deputy had reasonable suspicion to stop and question Appellant as to his identity and reasons for being at a known, vacant residence.
 {¶ 16} We next proceed to the issues of further investigation and detention. The scope and duration of the investigative stop must last no longer than is necessary to effectuate the purpose for which the initial stop was made. United States v.Brignoni-Ponce (1975), 422 U.S. 873, 95 S.Ct. 2574; State v.Chatton (1984), 11 Ohio St.3d 59, 63, 463 N.E.2d 1237; State v.Bevan (1992), 80 Ohio App.3d 126, 129, 608 N.E.2d 1099. If circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop, in the context of a traffic stop, we have noted that the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues, even if the officer satisfied that the suspicion that justified the stop initially has dissipated. State v. Myers (1990),63 Ohio App.3d 765, 771, 580 N.E.2d 61. However, the lawfulness of the initial stop will not support a "fishing expedition" for evidence of another crime. Bevan, supra, at 130; see, also, State v.Inabnitt (1991), 76 Ohio App.3d 586, 590, 602 N.E.2d 740.
 {¶ 17} Here, although we have determined that the officer's initial encounter with Appellant was consensual, we have also reasoned that it was supported by reasonable suspicion. After the deputy permissibly asked Appellant for identification, he ran the information through the LEADS system, which revealed an active warrant for Appellant's arrest from Brown County. Appellant seems to argue that the utilization of the LEADS system resulted in an illegal detention of Appellant, in light of Appellant's explanation for his presence on the property. However, it is our view that the LEADS check was merely part of the deputy's permissible inquiry, and verification, of Appellant's identity. Clearly, once the LEADS check revealed an active arrest warrant, the deputy had probable cause to detain Appellant and effectuate his arrest.
 {¶ 18} Appellant next challenges his arrest and subsequent search of the vehicle parked at the vacant residence. Specifically, Appellant argues that his consent to search was not voluntary because it was elicited after an unauthorized arrest on an invalid warrant, and was not preceded by Miranda warnings. Appellant further argues that the search of the automobile cannot be saved by the good faith exception to the warrant requirement, claiming that the officer's good faith reliance on an unlawful warrant doesn't supply probable cause for an arrest where none exists. Appellant cites State v. Timson (1974),38 Ohio St.2d 122, 311 N.E.2d 16, paragraph two of the syllabus and State v.Gough (1986), 35 Ohio App.3d 81, 519 N.E.2d 842, in support of his contention that the Ohio Supreme Court does not recognize a good faith exception to service of an invalid bench warrant where no independent probable cause exists for the arrest.
 {¶ 19} Appellant, however, has overlooked a more recent decision by the United States Supreme Court on this issue. InArizona v. Evans (1995), 514 U.S. 1, 115 S.Ct. 1185, an illegal arrest resulted from a court employee's error, and the court refused to suppress the evidence. In that case, the Court departed from its prior reasoning in Whitely v. Warden, Wyo.State Penitentiary (1971), 401 U.S. 560, 568-569, 91 S.Ct. 1031, which "treated identification of a Fourth Amendment violation as synonymous with application of the exclusionary rule to evidence secured incident to that violation." The Court noted that "[s]ubsequent case law has rejected this reflexive application of the exclusionary rule," with later cases emphasizing "that the issue of exclusion is separate from whether the Fourth Amendment has been violated, * * *, and exclusion is appropriate only if the remedial objectives of the rule are thought to be most efficaciously served." Citing Illinois v. Krull (1987),480 U.S. 340, 107 S.Ct. 1160; Massachusetts v. Sheppard (1984),468 U.S. 981, 104 S.Ct. 3424; United States v. Leon (1984),468 U.S. 897, 104 S.Ct. 3405; United States v. Calandra (1974),414 U.S. 338, 348, 94 S.Ct. 613.
 {¶ 20} In light of the foregoing reasoning, the United States Supreme Court has concluded that:
"The exclusionary rule does not require suppression of evidence seized in violation of the Fourth Amendment where the erroneous information resulted from clerical errors of court employees. The exclusionary rule is a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through its deterrent effect. However, the issue of exclusion is separate from the whether the Amendment is violated. The Amendment does not expressly preclude the use of evidence obtained in violation of its commands, and exclusion is appropriate only where the rule's remedial objectives are thought most efficaciously served. The same framework that this Court used in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405,82 L.Ed.2d 677, to determine that there was no sound reason to apply the exclusionary rule as a means of deterring misconduct on the part of judicial officers responsible for issuing search warrants applies in this case. The exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees. See id., at 916, 104 S.Ct. at 3417." Arizonav. Evans, 514 U.S. at paragraph two of the syllabus.
 {¶ 21} Thus, according to the reasoning in Arizona, the facts sub judice, while a violation of the Fourth Amendment, do not rise to the level of requiring invocation of the exclusionary rule. Here, an arrest warrant was mistakenly issued instead of a summons as a result of a mistake made by court personnel. Invocation of the exclusionary rule would not serve the remedial objectives contemplated in by the Court in Arizona. See, also,State v. Coleman (2000), 108 Ohio Misc.2d 48, 739 N.E.2d 419
(denying motion to suppress where arrest warrant issued as a result of incorrect information given to the court by the clerk and where there was no police misconduct). Thus, even though the arrest warrant was invalid, the subsequent consent provided and evidence seized in connection with the illegal arrest need not be suppressed.
 {¶ 22} Appellant primarily hinges his consent argument on the premise that the underlying arrest was invalid; however, he also asserts that the consent was invalid because Miranda warnings were not provided prior to obtaining the consent to search. TheFourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g. United States v. Arvizu (2002),534 U.S. 266, 273, 122 S.Ct. 744; Terry v. Ohio (1968), 392 U.S. at 9. "Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v.United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v. Weisner (1999), 87 Ohio St.3d 295,297, 720 N.E.2d 507; Xenia v. Wallace (1988),37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
 {¶ 23} No Fourth Amendment violation occurs when an individual voluntarily consents to a search. See United Statesv. Drayton (2002), 536 U.S. 194, 207, 122 S.Ct. 2105 (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); Schneckloth v. Bustamonte (1973),412 U.S. 218, 219, 93 S.Ct. 2041 ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); State v.Comen (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640. Consent to search is "a decision by a citizen not to assert Fourth Amendment rights." Katz, Ohio Arrest, Search and Seizure (2004 Ed.), Section 17:1, at 341.
 {¶ 24} Next, Appellant claims that his detention and subsequent arrest were illegal because they were based on an invalid arrest warrant. However, the fact that a detention and arrest is illegal does not per se render the consent invalid. An individual's voluntary consent, determined under the totality of the circumstances, may validate an illegal detention and subsequent search if the consent is an "independent act of free will." Florida v. Royer (1983), 460 U.S. at 501-502. For an unlawfully detained individual's consent to be considered an independent act of free will, "the totality of the circumstances" must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave.
 {¶ 25} Here, Appellant was not only detained, he was under arrest at the time he provided consent to search. However, as discussed further, infra, the fact that Appellant was under arrest at the time he provided consent does not destroy the voluntariness of his consent. The state has the burden of proving, by "clear and positive" evidence, not only that the necessary consent was obtained, but that it was freely and voluntarily given. Florida v. Royer, 460 U.S. at 497; Bumperv. North Carolina (1968), 391 U.S. 543, 548, 88 S.Ct. 1788;State v. Posey (1988), 40 Ohio St.3d 420, 427, 534 N.E.2d 61. "Clear and positive evidence" is the equivalent of clear and convincing evidence. State v. Danby (1983), 11 Ohio App.3d 38,41, 463 N.E.2d 47.
 {¶ 26} Whether an individual voluntarily consented to a search is a question of fact, not a question of law. See Ohio v.Robinette (1996), 519 U.S. 33, 40, 117 S.Ct. 417; Schneckloth,412 U.S. at 227; State v. Robinette (1997), 80 Ohio St.3d 234,248-249, 685 N.E.2d 762; see, also State v. Southern (Dec. 28, 2000), Ross App. No. 00CA2541, 2000-Ohio-2027. Because reviewing courts should defer to the trial court in this situation, as the trier of fact, we must give proper deference to the court's findings regarding whether Appellant consented to a search.
 {¶ 27} Accordingly, we review the trial court's finding that Appellant voluntarily consented to the search under a weight of evidence standard, as set forth in State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. Even though the state's burden of proof is "clear and convincing," this standard of review is highly deferential and the presence of only "some competent, credible evidence" to support the trial court's finding requires us to affirm it. Id. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. The principle applies to suppression hearings as well as to trials. See State v. Fanning
(1982), 1 Ohio St.3d 19, 437 N.E.2d 583.
 {¶ 28} There are several important factors that the trial court must consider in determining whether a consent was voluntary. They include: 1) the suspect's custodial status and the length of the initial detention; 2) whether the consent was given in public or at a police station; 3) the presence of threats, promises, or coercive police procedures; 4) the words and conduct of the suspect; 5) the extent and level of the suspect's cooperation with police; 6) the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law;" and 7) the suspect's education and intelligence. SeeSchneckloth, 412 U.S. at 248-249; see, also, State v.Lattimore, Franklin App. No. 03AP-467, 2003-Ohio-6829, at ¶ 14;State v. Dettling (1998), 130 Ohio App.3d 812, 815-816,721 N.E.2d 449.
 {¶ 29} Application of the Schneckloth factors demonstrates that the trial court's finding that Appellant voluntarily consented to the search is not against the manifest weight of the evidence. Although Appellant was under arrest at the time he provided consent to search, this fact does not destroy the voluntary nature of the consent. State v. Clelland (1992),83 Ohio App.3d 474, 615 N.E.2d 276 (stating that "[e]ven though consent obtained after arrest may be suspect, the fact of arrest does not necessarily vitiate what otherwise appears to be a valid consent; in other words, the dispositive question is whether the officers used coercive tactics or took unlawful advantage of the arrest situation to obtain consent.); citing, United States v.Jones (C.A. 5, 1973), 475 F.2d 723, 730. Consent was not provided in a public place, nor was it provided at the police station. Rather, it was provided on private property, not owned by the Appellant. We find nothing relative to this factor that reduces the voluntariness of the consent. There is no evidence of any threats, promises, or coercive tactics and the words and actions of the Appellant indicate the consent was voluntary. Appellant, at all times, cooperated with the deputies and when asked for consent to search, stated "I guess so." Additionally, as far as his status as a "newcomer" to the law, Appellant has a prior criminal history, having served a prior prison term, and currently being under arrest for a pending charge. Although there is no information in the record regarding Appellant's educational level or intelligence, there is nothing to indicate Appellant was of low intelligence.
 {¶ 30} Appellant further argues that his consent was invalid because Miranda warnings were not given prior to obtaining consent to search. However, in response to this same argument, this Court has previously held that "[t]he weight of authority holds that prior Miranda warnings are not required to validate consent searches, even when the consent is obtained after the defendant is effectively in custody." State v. Clelland,83 Ohio App.3d at 481, citing State v. Austin (1976),52 Ohio App.2d 59, 368 N.E.2d 59. "Therefore, the mere absence of Miranda
warnings after the arrest and prior to the search did not invalidate the search." State v. Clelland,83 Ohio App.2d at 481. Thus, because the trial court's finding that the Appellant voluntarily provided consent to search the vehicle is supported by competent, credible evidence, we cannot conclude that it is against the manifest weight of the evidence.
 {¶ 31} Because we find that the consent exception to the warrant requirement is applicable in the case sub judice, we will not address the additional issues raised in Appellant's first assignment of error. In light of the foregoing reasoning, we cannot conclude that the trial court erred in denying Appellant's motion to suppress. Accordingly, Appellant's first assignment of error is overruled.
 II. {¶ 32} In his second assignment of error, Appellant asserts that the trial court erred to his prejudice in conducting a bench trial without a written waiver of his right to trial by jury. Appellant advances another unrelated argument under this assignment of error, asserting that the trial court also erred in failing to rule on his pretrial motion to suppress statement. However, as already discussed, supra, we disagree with Appellant's contention that the trial court failed to rule on that motion. Further, when a trial court fails to rule on a motion, an appellate court will presume that the trial court overruled that motion. State v. Rozell and State v. Kennedy,
supra. Nevertheless, we agree with Appellant's assertion that the trial court erred in conducting a bench trial absent a written waiver of Appellant's right to a jury trial.
 {¶ 33} R.C. 2945.05 provides that a defendant may waive a properly demanded jury trial, but that such waiver "shall be in writing, signed by the defendant, and filed * * * and made part of the record * * *." See, also, State v. Pless (1996),74 Ohio St.3d 333, 658 N.E.2d 766, paragraph one of the syllabus. InState v. Jackson (Mar. 11, 1998), Athens App. No. 97CA22, 1998 WL 128997, this Court recognized that "[t]he statute only requires a written jury waiver from defendants who are tried by the court rather than by a jury."
 {¶ 34} In Pless, the Supreme Court of Ohio held that "[i]n a criminal case where the defendant elects to waive the right to trial by jury, R.C. 2945.05 mandates that the waiver must be in writing, signed by the defendant, filed in the criminal action and made part of the record thereof. Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury." (Citations omitted). State v. Pless (1996), 74 Ohio St.3d at paragraph one of the syllabus. Although Appellant's counsel orally waived his right to a jury trial, on the record, Appellant did not withdraw his jury demand in writing. Thus, the trial court was without jurisdiction to conduct a bench trial. As such, we find Appellant's second assignment of error has merit.
 {¶ 35} In light of our disposition of the Appellant's second assignment of error, the issues raised in Appellant's third assignment of error have been rendered moot. Accordingly, Appellant's conviction and sentence are vacated and this matter is remanded to the trial court for further proceedings consistent with this opinion.
Sentence be vacated and cause remanded.
 JUDGMENT ENTRY
It is ordered that the SENTENCE BE VACATED AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, P.J. and Abele, J.: Concur in Judgment and Opinion.
[1] Appellant asserts that the trial court failed to issue a written entry reflecting its decision regarding the motion to suppress statement, but that the trial court "apparently granted" the motion. We disagree. The trial court, in its Decision and Entry on the motions to suppress, referenced and relied on the fact that Appellant provided consent to search the vehicle. Appellant's motion to suppress statement requested suppression of the statement providing consent for this search. As such, we find that the trial court did, in fact, deny the motion to suppress statement in its decision and entry. Further, we have held that generally, when a trial court fails to rule on a motion, an appellate court will presume that the trial court overruled that motion. State v. Rozell (June 20, 1996), Pickaway App. No. 95CA17, 1996 WL 344034; State v. Kennedy (Oct. 2, 1995), Athens App. No. 95 CA1657, 1995 WL 580858. Therefore, even if the record indicated that the trial court did not expressly rule on Appellant's motion to suppress statement, we presume that the trial court overruled the motion.
[2] We must note that our review of the facts related to the initial stop and subsequent detention, investigation and arrest by the Brown County deputy are somewhat limited. It appears from the transcript of the April 26, 2005 hearing on the motion to suppress that a prior evidentiary hearing was conducted, of which there was apparently no record created. It was at this hearing that the Brown County deputy testified. However, there is also an affidavit by Appellant's counsel filed with this court in support of a motion for extension, which indicates that there was no prior hearing conducted, but that there was a written witness summary (presumably of the Brown County deputy) stipulated to by the parties. Unfortunately, this stipulated summary was not made a part of the record on appeal. As such, for purposes of determining whether the trial court erred in denying the motion to suppress, we are limited to the Brown County deputy's "Investigator Notes," which are marked as Exhibit 1 to the transcript of the suppression hearing, for his account of the events leading to Appellant's arrest and subsequent conviction.